PEOPLE v FOMBY

Docket No. 308338. Submitted March 5, 2013, at Lansing. Decided
    March 19, 2013, at 9:15 a.m.
    A Wayne Circuit Court jury, Annette J. Berry, J., convicted William
    M. Fomby of first-degree felony murder, MCL 750.316(1)(b), armed
    robbery, MCL 750.529, and carjacking, MCL 750.529a. At defen-
    dant's trial, a certified video forensic technician identified indi-
    viduals in video surveillance footage of the gas station that was
    robbed as the same individuals depicted in still photos made from
    that video. Defendant appealed, arguing that the technician's
    testimony invaded the province of the jury and that the court's
    admission of the testimony was error warranting reversal.

    The Court of Appeals *held*:

    The purpose of the technician's testimony was to establish
    whether the two suspects involved in the shooting and whose
    images were captured in the surveillance video had been to the gas
    station before the murder. The still photos made from the video
    showed the suspects, the victim, and a woman who accompanied
    the suspects, and the technician identified those individuals as
    being in the video. He did not testify that any of the individuals
    depicted in either the still photographs or the surveillance video
    was defendant. MRE 702 governs the admission of expert witness
    testimony, while MRE 701 permits the admission of lay opinion
    testimony, which to be admissible must be rationally based on the
    perception of the witness and helpful to a clear understanding of
    the witness's testimony or the determination of a fact in issue. The
    technician's testimony was lay opinion testimony. It was based on
    his perception. That he was not present when the events were
    videotaped was irrelevant because his testimony was based on his
    own viewing of the video. The testimony was intended to provide
    a clearer understanding about a fact at issue in the case (whether
    the suspects depicted in the video had been to the gas station
    earlier). The technician viewed the six-hour video and the still
    photos several times to reach his conclusions and opinions, and it
    could reasonably be inferred that his testimony helped the jury
    (which did not view the video and photos several times) correctly
    and efficiently determine that fact. The testimony did not invade

the province of the jury. The technician did not identify defendant in the video or photos or express an opinion on defendant's guilt or innocence. As the creator of the photos, the technician was in the best position to identify the individuals in the photos as those depicted in the video. The trial court did not abuse its discretion by admitting the testimony under MRE 701.

Affirmed.

EVIDENCE — LAY OPINION TESTIMONY — IDENTIFICATION OF INDIVIDUALS IN PHOTOS.

If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences that are (1) rationally based on the witness's perception and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; the evidence of a witness who prepared still photos from a video, extensively compared the photos and video, and testified that individuals depicted in the photos were the same as individuals in the video without expressing an opinion on the defendant's innocence or guilt is admissible as lay opinion testimony (MRE 701).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training and Appeals, and *Ana I. Quiroz*, Assistant Prosecuting Attorney, for the people.

*Linda D. Ashford, P.C.* (by *Linda D. Ashford*), for defendant.

Before: MURRAY, P.J., and MARKEY and WHITBECK, JJ.

MARKEY, J. Defendant appeals by right his convictions after a jury trial for first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and carjacking, MCL 750.529a. The trial court sentenced defendant to life imprisonment for felony murder and 19 to 80 years' imprisonment for armed robbery and carjacking. We affirm.

Defendant argues that the testimony of Sergeant Ron Gibson, a certified video forensic technician, regarding the identity of individuals in still photos and surveillance footage was lay opinion testimony. Defendant contends that his identity was at issue and this testimony was irrelevant and superfluous because conclusions and opinions regarding the identity of individuals in the still photos and in the surveillance footage could have been drawn by the jury. Therefore, defendant contends, this testimony invaded the province of the jury, and the trial court's admission of this evidence was error warranting reversal. We disagree.

We review for an abuse of discretion the trial court's evidentiary rulings that have been properly preserved. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an *outcome that falls outside the range of* reasonable and principled outcomes." *Id.* at 217.

Generally, all relevant evidence is admissible except as otherwise provided by either the state or the federal constitution or by court rule. MRE 402; *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Even if evidence is relevant, it "may be excluded if its probative value *is* substantially outweighed by the danger of unfair prejudice . . . ." MRE 403; see also *Yost*, 278 Mich App at 407.

MRE 701 permits the admission of lay opinion testimony and provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based

on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

MRE 702 permits the admission of expert testimony and provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Gibson's testimony identified individuals depicted in still-frame photos—taken from the surveillance video—as the same individuals in the actual video. The purpose was to determine whether the two suspects involved in the shooting and whose images were captured in the surveillance video had been to the BP gas station before the murder. Gibson explained what he was trying to capture in each of the six still photographs. Each photo captured specific individuals: the suspects, the victim, or a woman whom Gibson saw accompanying the two suspects earlier in the evening of the murder. When asked about the surveillance video, Gibson identified the victim, the suspect who had a shotgun, and the suspect who was holding the victim. Gibson identified Exhibit 4 as a still photo depicting the person in the video who was holding the shotgun and Exhibit 9, another still photo from the video, as depicting the person grasping the victim. Gibson never testified that any of the individuals depicted in either the still photographs or the surveillance video was defendant.

The gateway question is whether Gibson's testimony constituted expert testimony or lay opinion testimony, i.e., whether MRE 702 or MRE 701 applies, respectively. MRE 701 is virtually identical to FRE 701, and because no published Michigan case addresses this specific issue, we review relevant federal cases.[1] In *United States v Begay*, 42 F3d 486, 502 (CA 9, 1994), an officer provided narrative testimony regarding an enhanced video of a demonstration involving about 200 demonstrators that resulted in violence. The officer magnified the videotape, reviewed more than 800 photographs taken during the incident, copied portions of the videotape in slow motion, and enhanced its quality to help his identification of the individuals depicted. He then added circles and arrows to help the jury follow the defendants' movements. *Id.* The United States Court of Appeals for the Ninth Circuit determined that this was not expert testimony; it was lay witness opinion testimony. *Id.* Just as the officer in *Begay* presented lay opinion testimony, Gibson also presented lay opinion testimony. Further, Gibson was qualified as a forensic video technician, "proficient in the acquisition, production and presentation of . . . video evidence in court[.]" Even if these qualifications do not extend to comparison and identification of individuals within still photographs made from videos, Gibson's testimony was properly admitted as lay opinion testimony under MRE 701.

First, Gibson's testimony was rationally based on his perception. Gibson was not at the scene while the video footage was being recorded and did not observe firsthand the events depicted on the video. Instead, Gibson watched the video, produced short clips of the individu-

---

[1] Lower federal court decisions are not binding on this Court, but may be considered on the basis of their persuasive analysis. *People v Patton*, 285 Mich App 229, 234; 775 NW2d 610 (2009).

als while they were inside the store, and isolated certain frames to create still images. On the basis of his scrutiny of the video surveillance footage and the still images he created from the video, Gibson provided his opinions regarding the identity of individuals within the video as compared to the still images from portions of the video. In *Begay*, the Ninth Circuit held that the contention that the officer's testimony about the video-tape was not based on his own perceptions because he was not present when the events that were videotaped occurred lacked merit because his testimony was based on his own perceptions of the video itself. *Begay*, 42 F3d at 502-503. The Ninth Circuit particularly noted the officer's "extensive review" of the video. *Id.* at 503. Similarly here, while Gibson was not at the scene when the events depicted in the video were occurring, Gibson testified that he created the still photos from the surveillance video and cropped some of the photos to create a closer view. The purpose for creating the still photos was to determine whether the two suspects had come to the BP gas station earlier in the evening before the murder took place. As was the conclusion with the officer in *Begay*, it can be inferred from Gibson's testimony that he viewed the video and the still photos several times in order to draw his conclusions and opinions about the identity of the individuals in the surveillance video and still photos as compared to other individuals depicted in the same evidence.

Second, Gibson's testimony was intended to provide a clearer understanding about whether the two suspects depicted in the video had been to the BP gas station earlier in the evening, a fact at issue in the case. In *Begay*, the Ninth Circuit concluded that the officer's testimony likely helped the jury evaluate the videotape because it could reasonably be assumed that "one viewing a videotape of a demonstration involving over

200 people would likely not see certain details, given the tremendous array of events all occurring simultaneously," and the officer's testimony "could help the jury discern correctly and efficiently the events depicted in the videotape." *Begay*, 42 F3d at 503. Similarly here, there were approximately six hours of surveillance video that Gibson reviewed to create still photographs and short clips. It is not clear whether there were other individuals in the six hours of video, but given its length, it can be inferred that there were. Because it can be inferred that Gibson viewed the surveillance footage and still photos several times to reach his conclusions and opinions, it can similarly be reasonably inferred that Gibson's testimony helped the jury to correctly and efficiently determine whether the two individuals seen earlier in the footage were the same individuals who were involved in the murder later depicted in the video.

Third, Gibson's testimony did not invade the province of the jury. In *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9, 1993), an officer provided lay opinion testimony that the defendant was the individual captured in surveillance photographs from the bank that was robbed. The Ninth Circuit concluded that the trial court abused its discretion by admitting this testimony and remanded the case. *Id*. The Ninth Circuit identified two situations under that circuit's precedent illustrative of when such testimony was admissible. The *LaPierre* court opined that the "common thread" of this authority was "reason to believe that the witness is more likely to identify correctly the person than is the jury." *Id*. The court concluded that the issue of whether the defendant in the courtroom was the person pictured in a surveillance photo "was a determination properly left to the jury." *Id*.; see also *United States v Rodríguez-Adorno*, 695 F3d 32, 40 (CA 1, 2012) (holding that when a witness is in no better position than the jury to make

an identification from a video or photograph, the testimony is inadmissible under FRE 701).

But unlike the officer in *LaPierre*, Gibson did not identify defendant in the video or still images. Gibson's testimony only linked individuals depicted in the surveillance video as being the same individuals depicted in the still photographs. While "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense," *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985), Gibson expressed no such opinion. Further, because Gibson was comparing the video surveillance video to still images that he himself had *created* from the six-hour long video, Gibson was in the best position to identify the individuals in the photographs as being the same as those depicted in the video. Gibson's testimony did not invade the province of the jury.

Because Gibson's testimony was (1) rationally based his own perception of the video and (2) helpful for the jury to determine whether the two individuals seen committing the crime in the surveillance video had come to the BP gas station earlier in the evening, Gibson's testimony was admissible under MRE 701. Further, because we conclude that Gibson's testimony regarding his opinions and conclusions did not invade the province of the jury, we also conclude the trial court did not abuse its discretion by admitting Gibson's testimony.

We affirm.

MURRAY, P.J., and WHITBECK, J., concurred with MARKEY, J.