# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JOHN ANTHONY AGUILAR,

       Defendant-Appellant.

UNPUBLISHED
November 20, 2014

No.  317215
Kalamazoo Circuit Court
LC No.  2012-001228-FC

Before:  M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree murder, MCL 750.316(1)(a), first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and first-degree home invasion, MCL 750.110a(2).  We affirm.

Defendant's convictions stem from the death of Robert Medema.  Defendant and Antonio Livingston were convicted of Medema's murder on the theory that they had broken into Medema's home in an attempt to steal money from him and subsequently beat him to death.[1] The jury heard testimony that defendant encountered Medema when Medema purchased a cross at defendant's garage sale and displayed a large amount of cash.  There was evidence that, on a daily basis, Medema visited his friend who lived across the street from defendant.  The jury was presented with evidence that, following Medema's purchase of the cross, defendant followed him to learn where he lived.  Livingston testified that on August 10, 2012, he and defendant went to Medema's house.  He further claimed that, after they received a call from Elizabeth Summers, who told them that Medema had left his friend's house, Livingston entered the house through a window the two men had broken and waited for Medema.  Livingston testified that, after Medema came home and saw him, he hit him at least five times in the head with a baseball bat and stole his money.  Livingston stated that after this incident, he, defendant, and Summers went to Detroit, where defendant cleaned his pickup truck, leaving it "immaculate."

---

[1] Defendant and Livingston were tried separately; Livingston was convicted prior to defendant's trial.

Defendant argues that he was denied the effective assistance of counsel.[2] The right to the effective assistance of counsel is guaranteed by the United States and Michigan constitutions. US Const Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039, 80 L Ed 2d 657 (1984); *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *Swain*, 288 Mich App at 643. "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *Id*.

Defendant claims that his trial counsel was ineffective for eliciting testimony from two witnesses, Summers and a police officer, from which the jury could conclude that defendant was a thief. While defense counsel did elicit such testimony, she did so as part of an acceptable trial strategy. Counsel established that defendant often stole items and later attempted to sell them at a garage sale. She even sought testimony that defendant had been suspected in an earlier burglary at a home in Medema's neighborhood. In closing, counsel used this information in an attempt to portray defendant as a mere thief interested in material goods, not a man interested in stealing money or committing murder. Decisions regarding what evidence to present and how to cross-examine witnesses involve matters of trial strategy, *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999), and we will not second-guess counsel on matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight, *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Thus, despite the fact that defense counsel's strategy ultimately failed to secure a not guilty verdict, defendant has failed to overcome the presumption that counsel's cross-examination of the two witnesses was sound trial strategy and, accordingly, has failed to demonstrate that her performance fell below objective standards of reasonableness.

Defendant next claims that counsel was ineffective for failing to object after the prosecutor asked Livingston if Summers was "mistaken" or "wrong" when she testified that, after the murder, he and defendant returned separately to defendant's residence and Livingston came back without pants. Although a prosecutor may not ask a witness to comment or provide an opinion on the credibility of another witness, *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985), a prosecutor may attempt to ascertain which facts are in dispute, *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003). The prosecutor's questions to Livingston were not improper because they did not ask him to provide an opinion on Summers' credibility; rather, the questions were an attempt to ascertain and clarify facts that were in dispute. Because the prosecutor's questions were proper, any objection would have been futile, and counsel is not ineffective for failing to raise a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

---

[2] "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Defendant argues that counsel was ineffective when she allowed the trial court to ask a juror's question to a police officer asking why he concluded that defendant was involved in the plot to rob Medema. A witness may not opine about the defendant's guilt or innocence of the charged crimes. *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013). Implied in the juror's question was that the officer believed defendant was involved in the robbery and the question essentially asked the officer to explain his belief that defendant was guilty of the charged crimes. Thus, the question improperly asked the officer to opine on defendant's guilt. However, decisions regarding how a witness should be questioned are presumed to be matters of trial strategy. *Horn*, 279 Mich App at 39. Defense counsel may have made the strategic choice that it was best to let the question be asked given that the question was from a juror and she did not want the jurors to become frustrated that some of their questions were not being asked. Defense counsel did object when the officer's answer became lengthy and referenced some evidence that was not presented at trial. Because we will not second-guess counsel on matters of trial strategy and because counsel objected once the officer's answer lengthened and became more damaging to the defense case, we conclude that defendant is not entitled to relief on this claim of ineffective assistance of counsel.

Even if defense counsel's performance fell below objective standards of reasonableness, defendant is not entitled to relief because he has not established a reasonable probability that, but for counsel's error, the result of his trial would have been different. *Swain*, 288 Mich App at 643. Strong evidence of defendant's guilt independent of the asserted errors of counsel was presented to the jury. One witness testified that when defendant saw the man who bought the cross pull out a large amount of money, he flew off the porch and became interested in the sale. Defendant subsequently told that witness and another individual that he had been following the man and knew where he lived. Defendant asked the witness a "whole lot" of times to help him get the man's money. Livingston testified that it was defendant's idea to rob Medema. According to Livingston, on August 10, 2012, he and defendant drove to the area of Medema's house. They broke a bathroom window, and defendant entered the house through the window. He returned to Livingston after receiving a telephone call from Summers and learned that the pickup truck across the street from his residence had left. Livingston then went into the house through the window to wait for Medema. He hit Medema with a baseball bat and took his money. Livingston's testimony about Summers watching for Medema's pickup truck to leave and about the telephone calls between the two men and Summers was corroborated by Summers and telephone records. Later that night, in Detroit, defendant power-washed his pickup truck, cleaned the truck's interior with tape, and altered its appearance. He placed a peace sign on it, changed the mirrors, and put on a "back piece." He also told Summers that he was moving to Colorado. Impressions made by two different shoes were found in Medema's bathroom. There was testimony that one of the shoeprints was from Livingston and the other remained unidentified. Further, the statements of innocence that defendant gave to the two detectives in his interview and to a news reporter were contradicted by evidence. Defendant told the detectives that after going to Detroit on August 10, 2012, he went to Angel's Gentleman's Club and gave "Fire" a ride home, but Kirstie Hunsberger, also known as "Fire," did not work at the club that evening. Defendant told the reporter that he had planned to rob Medema's house but changed his mind several weeks earlier when he saw security signs at the house and that he had robbed another house in the area on August 10, 2012. Medema's house did not have any security signs and no other robberies were reported in the neighborhood between August 7 and 17, 2012. Based on this evidence, defendant has failed to establish a reasonable probability that,

but for the asserted errors on the part of his trial counsel, the outcome of the proceedings would have been different. Accordingly, defendant is not entitled to relief on the basis of ineffective assistance of counsel.

Defendant argues that the trial court erred when it failed to consider and grant his motion for a change of venue based on the pretrial publicity of his case.[3] On the first day of trial, the court acknowledged that defendant's motion was pending, but stated that the motion was completely dependent on jury selection. Defendant voiced no disagreement, nor did he object to the trial court's plan to individually question all venire members who indicated having any knowledge of the case. A thorough jury selection process ensued, which included sequestered questioning of any venire member who had any knowledge of the case. Any venire members who expressed an opinion on defendant's guilt were promptly excused. Defendant did not use all of his preemptory challenges and expressed his satisfaction with the chosen jury, electing not to reassert his request for a change of venue. Because the trial court followed the steps suggested to minimize the prejudice of pretrial publicity by our Supreme Court in *Jendrzejewski*, 455 Mich at 509-510, defendant expressed his satisfaction with the chosen jury, did not renew his motion, and did not exhaust his preemptory challenges, as well as the general rule that a criminal defendant must be tried in the county where the crime was committed, *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008), we find no error in the trial court's implicit denial of defendant's request for a change of venue.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

---

[3] We review a trial court's decision on a motion for change of venue for an abuse of discretion. *People v Jendrzejewski*, 455 Mich 495, 509; 566 NW2d 530 (1997).