# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

MARYANNE GODBOLDO, also known as
MARYANN GODBOLDO,

      Defendant-Appellee.

UNPUBLISHED
January 21, 2016

No. 323261
Wayne Circuit Court
LC No. 11-004005-AR

---

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

The prosecution appeals by delayed leave granted[1] the circuit court's order affirming the district court's denial of the prosecution's motion for bindover on the charges of three counts of felonious assault, MCL 750.82, three counts of assaulting or obstructing a police officer, MCL 750.81d(1), one count of discharge of a firearm in a building, MCL 750.234b(2), and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We reverse and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

This Court summarized the underlying facts in this case in its opinion reversing the circuit court's initial order upholding the district court's dismissal of the charges in this case:

> Mia Wenk, an employee of the Michigan Department of Human Services, scheduled a permanency planning conference with Godboldo to address a Child Protective Services referral concerning Godboldo's teenage daughter. After Godboldo failed to attend the conference, Wenk petitioned the family division of the circuit court to remove Godboldo's daughter from her custody.

---

[1] See *People v Godboldo*, unpublished order of the Court of Appeals, entered March 4, 2015 (Docket No. 323261).

-1-

On March 24, 2011, the family court judge issued an order authorizing someone to enter Godboldo's home to remove the daughter. The order contained several irregularities on its face, including that (1) the line specifying who was to execute the order was left blank, (2) it was not dated, and (3) it contradicted itself concerning whether reasonable efforts to prevent the daughter's removal were made. The order was stamped with a family court judge's name, and bore both a date stamp and a raised seal.

Wenk contacted the Detroit Police Department for assistance with removing Godboldo's daughter. According to Officer Kevin Simpson, the first time he knocked on Godboldo's front door, she answered. After he asked Godboldo if he could speak with her about the order to remove her daughter, she told him that she was going to call her attorney, and closed the door. Officer Simpson retrieved the order and approached Godboldo's door again. Godboldo again answered the door, informed him that he was scaring her child, and closed the door.

Officer Simpson testified that he then spoke with Lieutenant Nied, who arrived in a marked car, approached the door, and knocked. According to Officer Simpson, Lieutenant Nied received no answer. Lieutenant Nied retrieved a crowbar from his car, approached the home's side door, yelled "police," and pried open the side door. Officer Simpson testified that Lieutenant Nied went up the stairs inside the door toward another door on a landing. After finding it locked, Lieutenant Nied attempted to kick the door. A loud noise that sounded like a gunshot came from the door's other side, and the officers retreated back down the stairs. At the bottom of the stairs, Officer Simpson noticed that there was a white powder on Lieutenant Nied's shoulder, which was later identified as plaster powder dislodged by a bullet.

Officer Simpson testified that he immediately went out to the street, where Godboldo's sister was on a cellular phone, and that he "went on the cell phone and I asked her why or I asked [Godboldo], why she shot at us. And she stated that because [sic] we came into her house." Officer Simpson testified that Godboldo never explicitly said that she fired a gun, and that he was not certain that the person he spoke with on the phone was actually Godboldo. Lieutenant Nied declared a barricaded gunman situation.

Judge Deborah Thomas testified that she was called to mediate between the officers and Godboldo. Judge Thomas testified that she spoke with Godboldo by phone. Godboldo acknowledged that the police came to her door, and stated that she was the only adult in the home and that a gun was discharged. Judge Thomas testified that Godboldo never said that she fired the gun but, on the basis of her statements, she concluded that Godboldo fired the gun.

After the barricaded gunman situation was resolved, officers William Blake and Melissa Sanchez executed a search warrant. Officer Blake testified that he found plaster covering the kitchen, the top of the landing, and the steps

near the door; a bullet hole in the landing area; a revolver sitting on top of a piano; and a purse under the couch cushions that contained bullets matching the caliber of the revolver. As stated above, the prosecution charged Godboldo with discharging a weapon in a building, felonious assault, assaulting or obstructing a police officer, and felony-firearm. [*People v Godboldo*, unpublished opinion per curiam of the Court of Appeals, issued May 28, 2013 (Docket No. 308459), pp 1-2 (alterations in original).]

This Court also summarized the related child-protective proceedings as follows:

> On August 1, 2011, the Wayne Circuit Court, Family Division heard arguments concerning the validity of the removal order—not the search warrant—as it pertained to the child protective proceedings case. Wayne County Chief Deputy Clerk Lynn Wade testified at that proceeding that she was not certain whether the seal was the county's official seal, and that the time stamp was not a stamp the county used. Vikki Kapanowski, a juvenile court supervisor, testified that probation officers would use the judge's stamp to stamp protective orders, and responded affirmatively when asked whether they would do so "without judicial input."

> The family division judge noted that the child protective proceeding "is not a criminal matter, it is not the same as a search warrant that's executed in a criminal matter." The family division judge determined that the removal order was valid to invoke the court's subject matter jurisdiction, and denied Godboldo's "motion to dismiss" the child protective proceeding. In July 2012, a panel of this Court reviewed the family division's ruling on appeal. We concluded that whether the removal order was valid was moot. [*Id*. at 3 (citations omitted).]

On August 29, 2011, the district court denied the prosecution's motion to bind defendant over and dismissed the charges against her. The prosecution appealed to the circuit court, which upheld the district court's dismissal of the charges. The prosecution appealed to this Court. On May 28, 2013, this Court reversed the circuit court's decision and remanded to the district court for reinstatement of the charges against defendant and for further proceedings consistent with the opinion. *Godboldo*, unpub op at 7. Relevant to this appeal, this Court held that the district court erred in determining that the exclusionary rule applied to suppress any evidence regarding what occurred after the gun was discharged and that the prosecution provided sufficient proof that defendant was the person who shot the gun. *Id*. at 5-7. This Court provided the following guidance to the district court on remand:

> To provide the district court additional guidance on remand, we note that a defendant "may use such reasonable force as is necessary to prevent an illegal attachment," and that a person has a common law-right to resist unlawful police conduct. However, a defendant does not generally have the right to resist an arrest with the use of deadly force. The defendant may only use deadly force if

>> the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm. . .

-3-

. However, an act committed in self-defense but with excessive force or in which defendant was the initial aggressor does not meet the elements of lawful self-defense.

The district court should consider and apply these principles to determine whether to bind over Godboldo on charges of resisting or assaulting a police officer under MCL 750.81d(1). [*Id.* at 7 (citations omitted).]

On March 14, 2014, the district court held a hearing regarding whether to bind defendant over on the charges. The district court determined that the order to take the child into protective custody was invalid since it was not signed by a judge and there was no judicial review of the order. The district court also determined that defendant fired a "warning shot" because the gun was discharged at the top of the door into the ceiling. The district court concluded that the warning shot did not constitute deadly force. Thus, the district court reasoned that defendant used reasonable force to prevent the police from removing the child without proper authority.

The prosecution appealed to the circuit court. On July 11, 2014, the circuit court held a hearing. The court noted that the order contains several irregularities, including that it left blank the line specifying the person who was to execute the order, it was not dated, and it contradicted itself regarding whether reasonable efforts were made to prevent removal. The circuit court pointed out that, although a judge's name appeared on the order, an employee of the Department of Human Services (now the Department of Health and Human Services) was the person who stamped the order, and the prosecutor agreed. The court also noted that there was testimony that the time stamp was not the official time stamp and that the seal was not the official county seal. The circuit court affirmed the dismissal of the charges.

## II. STANDARD OF REVIEW

We review "for an abuse of discretion a district court's decision to bind over a defendant." *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Furthermore, "[a] trial court necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012).

## III. GENERAL LEGAL STANDARDS FOR BINDOVER

To bind a defendant over to circuit court, the district court at a preliminary examination must "determine whether a felony was committed and whether there is probable cause to believe the defendant committed it." *People v Yost*, 468 Mich 122, 125-126; 659 NW2d 604 (2003). Probable cause exists where the evidence is " 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief' of the accused's guilt." *Id.* at 126 (citation omitted). "In order to establish that a crime has been committed, the prosecution need not prove each element beyond a reasonable doubt, but must present some evidence of each element." *People v Redden*, 290 Mich App 65, 84; 799 NW2d 184 (2010). Additionally, "[i]f the evidence conflicts or raises a reasonable doubt concerning the defendant's guilt, the

-4-

defendant should nevertheless be bound over for trial, at which the trier of fact can resolve the questions." *Id*.

## IV. VALIDITY OF THE COURT ORDER

The prosecution argues that the district court abused its discretion in refusing to bind defendant over on the charge of assaulting or obstructing a police officer. We agree.

MCL 750.81d(1) provides:

> Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

MCL 750.81d(7)(a) defines the term "obstruct" as "the use or threatened use of physical interference or force or a knowing failure to comply with a *lawful* command." (Emphasis added.) In *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012), the Michigan Supreme Court clarified that "the prosecution must establish that the [police] officers' actions were lawful." Thus, the officers must act lawfully in order for a defendant to be charged with assaulting or obstructing a police officer. *Id*.

The order to take the child into protective custody was valid. We first note that the order to take the child into protective custody complied with the court rule that was in effect at the time that the order was entered. At the time that the order was entered, MCR 3.963(B), as amended May 1, 2010, 485 Mich ccxxxviii-ccxlii (2010), provided, in part:

> (1) The court may issue a written order authorizing a child protective services worker, an officer, or other person deemed suitable by the court to immediately take a child into protective custody when, upon presentment of proofs as required by the court, the judge or referee has reasonable grounds to believe that the conditions or surroundings under which the child is found are such as would endanger the health, safety, or welfare of the child and that remaining in the home would be contrary to the welfare of the child. If the child is an Indian child who resides or is domiciled on a reservation, but is temporarily located off the reservation, the child is subject to the exclusive jurisdiction of the tribal court. However, the state court may enter an order for protective custody of that child when it is necessary to prevent imminent physical harm to the child. At the time it issues the order or as provided in MCR 3.965(D), the court shall make a judicial determination that reasonable efforts to prevent removal of the child have been made or are not required. The court may also include in such an order authorization to enter specified premises to remove the child.

(2) The written order must indicate that the judge or referee has determined that continuation in the home is contrary to the welfare of the child and must state the basis for that determination.[2]

The court order met the requirements of MCR 3.963(B) at the time it was entered. The order did not specify who was authorized to take the child into protective custody, but the court rule permitted the officers who entered the home to take the child into protective custody. See

---

[2] MCR 3.963(B)(1) now provides:

The court may issue a written order, electronically or otherwise, authorizing a child protective services worker, an officer, or other person deemed suitable by the court to immediately take a child into protective custody when, after presentment of a petition or affidavit of facts to the court, the court has reasonable cause to believe that all the following conditions exist, together with specific findings of fact:

(a) The child is at substantial risk of harm or is in surroundings that present an imminent risk of harm and the child's immediate removal from those surroundings is necessary to protect the child's health and safety. If the child is an Indian child who resides or is domiciled on a reservation, but is temporarily located off the reservation, the child is subject to the exclusive jurisdiction of the tribal court. However, the state court may enter an order for protective custody of that child when it is necessary to prevent imminent physical damage or harm to the child.

(b) The circumstances warrant issuing an order pending a hearing in accordance with:

(*i*) MCR 3.965 for a child who is not yet under the jurisdiction of the court, or

(*ii*) MCR 3.974(C) for a child who is already under the jurisdiction of the court under MCR 3.971 or 3.972.

(c) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(d) No remedy other than protective custody is reasonably available to protect the child.

(e) Continuing to reside in the home is contrary to the child's welfare.

MCR 3.963(B)(2) permits the court to include authorization to enter a specified premises in order to remove the child. See MCR 3.963(B)(2).

MCR 3.963(B)(1), as amended May 1, 2010, 485 Mich ccxxxviii-ccxlii (2010). The order provided that there were reasonable grounds to believe that the conditions or surroundings were such as to endanger the health, safety, or welfare of the child, and that it was contrary to the child's welfare to remain in the home. See *id*. The order detailed the reasons why remaining in the home was contrary to the welfare of the child. The order contradicted itself regarding whether reasonable efforts were made to prevent removal. Both the box corresponding with the option that reasonable efforts were made and the box corresponding with the option that reasonable efforts were not made were checked off on the order. However, it is clear from the order that the court intended for the order to state that reasonable efforts *were* made to prevent removal since the order provides that the permanency planning conference was held on March 23, 2011, but defendant failed to appear. See *id*. Finally, the order authorized entry of defendant's home in order to take the child into protective custody. Therefore, the order complied with the court rule that was in effect at the time that the order was entered. See *id*.

The order was also a constitutional warrant under the Fourth Amendment to the United States Constitution. We first note that the issue whether an order to take a child into protective custody constitutes a warrant or warrant equivalent under the Fourth Amendment is one of first impression in the Michigan courts.[3] However, we need not reach the issue whether an order to take a child into protective custody must constitute a valid search warrant or warrant equivalent in all cases in which there is entry into a home since the order in this case complied with the Fourth Amendment warrant requirement.

The Fourth Amendment to the United States Constitution guarantees the right against unreasonable searches and seizures. US Const, Am IV; *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). Therefore, "the lawfulness of a search or seizure depends on its reasonableness." *Snider*, 239 Mich App at 406. " 'Generally, a search conducted without a warrant is unreasonable unless there exist both probable cause and a circumstance establishing an exception to the warrant requirement.' " *Id.* at 407 (citation omitted). A search warrant passes muster under the Fourth Amendment when it "particularly describes the place to be searched, and the person or things to be seized." *People v Keller*, 479 Mich 467, 475; 739 NW2d 505 (2007). "The purpose of this requirement is to provide reasonable guidance to the officers executing the search with regard to the items to be seized and to prevent unfettered discretion in this determination." *People v Hellstrom*, 264 Mich App 187, 192-193; 690 NW2d 293 (2004). "A search or seizure is considered unreasonable when it is conducted pursuant to an invalid warrant or without a warrant where the police officer's conduct does not fall within one of the specific exceptions to the warrant requirement." *Id*. at 192.

---

[3] See *O'Donnell v Brown*, 335 F Supp 2d 787, 802 (WD Mich, 2004) (concluding that the court must conduct a Fourth Amendment analysis in order to determine whether an order authorizing the removal of a child constitutes a valid search warrant under the Fourth Amendment). The decision in *O'Donnell* is persuasive, but it is not binding on this Court. See *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013). This Court declined to determine whether the order was a warrant or warrant equivalent in its opinion in the previous appeal in this case. See *Godboldo*, unpub op at 5.

Here, the written order satisfied the warrant requirement under the Fourth Amendment since it stated with particularity defendant's address and the child who was to be taken into protective custody. See *Keller*, 479 Mich at 475. The order also stated the grounds for its issuance, namely that the conditions were such as to endanger the health, safety, or welfare of the child and that it was contrary of the welfare of the child to remain in the home. The order also detailed that there were CPS referrals involving defendant and that defendant refused to give the child prescribed medication related to the child's mental health condition. See MCL 780.654(2) ("The warrant shall either state the grounds or the probable or reasonable cause for its issuance or shall have attached to it a copy of the affidavit.").

As noted in this Court's prior opinion, there were several irregularities in the order, including "(1) the line specifying who was to execute the order was left blank, (2) it was not dated, and (3) it contradicted itself concerning whether reasonable efforts to prevent the daughter's removal were made." *Godboldo*, unpub op at 2.[4] However, the irregularities in the order did not render it an invalid warrant such that entry into the home was unconstitutional. Although the order did not specify who was to execute the order or the date on which the order was signed, and the order contradicted itself regarding whether reasonable efforts were taken to prevent removal, the order nevertheless specified the child who was to be taken into custody and authorized entry into defendant's home in order to take the child into protective custody. See *Keller*, 479 Mich at 475. The fact that the order did not specify who was to carry out the order did not render the order an invalid warrant since the court rule permitting a court to enter an order to take a child into protective custody permitted an officer to carry out the order. See MCR 3.963(B)(1), as amended May 1, 2010, 485 Mich ccxxxviii-ccxlii (2010). Finally, the fact that the order was undated and contradicted itself regarding whether reasonable efforts to prevent removal were made did not render the order an invalid search warrant. See *Keller*, 479 Mich at 475. Therefore, although there were irregularities in the order, the order was nevertheless a constitutional search warrant under the Fourth Amendment. See *id*.

The parties do not dispute that the evidence supported a showing that defendant assaulted or obstructed a police officer and that defendant knew or had reason to know the officers were police officers performing their duties. See MCL 750.81d(1). There was sufficient evidence to establish probable cause that defendant fired a gunshot toward the police officers. This Court previously held that there was sufficient evidence to establish that defendant was the person who discharged the gun. *Godboldo*, unpub op at 6-7. Additionally, several police

---

[4] Defendant argues on appeal that this Court determined that the order was invalid in its opinion in the first appeal in this case. We agree with defendant that had this Court held that the order was invalid, we would be bound to follow this Court's previous determination. See *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) ("Under the law of the case doctrine, 'if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same.' ") (citation omitted). However, this Court did not address the issue whether the order was invalid in its opinion in the previous appeal. See *Godboldo*, unpub op at 2.

officers clearly testified that they had identified themselves as police officers to defendant. In addition, as discussed above, the order was lawful in spite of the irregularities. Accordingly, the district court erred in refusing to bind defendant over on the three counts of assaulting or obstructing a police officer. See MCL 750.81d; *Moreno*, 491 Mich at 52. Because we conclude that the order was valid and lawful, we need not address the parties' arguments regarding the defense of resisting unlawful arrest. See *Moreno*, 491 Mich at 46-47, 52.

## V. THE REMAINING OFFENSES

The prosecution also argues that the district court erred in refusing to bind defendant over on the remaining offenses. We agree.

The prosecution presented abundant evidence to support the elements of the remaining charges—felonious assault, MCL 750.82, discharge of a firearm in a building, MCL 750.234b(2), and felony-firearm, MCL 750.227b. The prosecution presented evidence to support a finding of probable cause that defendant intentionally fired a gun in an occupied structure towards police officers. However, the district court abused its discretion in finding that the common-law right to resist unlawful police conduct with reasonable force precluded defendant's bindover.

The Michigan Supreme Court, in *Moreno*, discussed whether the common-law defense of resisting unlawful police conduct with reasonable force was abrogated by MCL 750.81d(1) in the context of resisting and obstructing. *Moreno*, 491 Mich at 44-58. *Moreno* did not discuss whether the defense applied to crimes other than resisting and obstructing. Accordingly, *Moreno* cannot stand for the proposition that the right to resist unlawful law enforcement conduct with reasonable force is applicable as a defense to all other crimes beyond resisting and obstructing. In *People v Dillard*, 115 Mich App 640, 642; 321 NW2d 757 (1982), this Court held that the right to resist unlawful police conduct while acting in self-defense was a valid defense to felonious assault.[5] However, this Court has more recently held that "[t]he right to resist an unlawful arrest is, in essence, a defense to the charge of resisting arrest, because the legality of the arrest is an element of the charged offense." *Detroit v Smith*, 235 Mich App 235, 237; 597 NW2d 247 (1999). Therefore, and logically, the fact that a defendant resisted unlawful police conduct with reasonable force is irrelevant as a defense to felonious assault, discharge of a firearm, or felony-firearm because the legality of police conduct is not an element to these offenses. See *id*.

The district court abused its discretion in finding that the common-law right to resist unlawful police conduct with reasonable force precluded defendant's bindover for her felonious assault, discharge of a firearm, and felony-firearm charges. The district court made an erroneous conclusion of law in determining that the right to resist unlawful police conduct with reasonable

---

[5] Per MCR 7.215(J)(1), "A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule."

force applied to crimes other than resisting and obstructing. Therefore, discussion of whether reasonable force was used here is not necessary because the defense of using reasonable force in resisting unlawful police conduct is unavailable for the remaining offenses. As the district court made an error of law here, it "necessarily abuse[d] its discretion." See *Waterstone*, 296 Mich App at 132. Accordingly, the district court erred in refusing to bind defendant over on the remaining offenses.

We reverse and remand for reinstatement of the charges and for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood