*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANDREW MICHAEL SWOFFER-SAULS,

Defendant-Appellant.

UNPUBLISHED
March 24, 2022

No. 353827
Alpena Circuit Court
LC No. 19-009297-FH

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

Defendant appeals his convictions, following a jury trial, of assault with intent to commit sexual penetration, MCL 750.520g(1), fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (sexual contact with force or coercion), felonious assault, MCL 750.81a, and stalking, MCL 750.411h. The trial court sentenced defendant to serve prison terms of 38 months to 10 years for the assault-with-intent conviction, 16 months to 2 years for the CSC-IV conviction, and 225 days each for the felonious-assault and stalking convictions. Defendant appeals as of right. We affirm defendant's convictions, but remand for resentencing.

## I. FACTS

The complainant, an adolescent female, went to the park with her sister and a friend to play basketball. She stopped at the home of an adolescent boy that she knew in an attempt to borrow his air pump to inflate her basketball. Defendant, whom the complainant had not previously met, also stayed at the home of the adolescent boy. The males invited the complainant into the home and into defendant's room under the guise that they would help with the basketball. According to the testimony, once in the bedroom, the door was shut, and the males threw condoms at the complainant and called her derogatory names, including sexually themed ones. They then struck her on the legs, attempted to force her to swallow a pill, forced her onto the bed, kicked her, and touched her breasts and buttocks. The complainant testified that they forced her legs open and touched her "everywhere," then defendant "tried going in [her] with [her] clothes" on, which the complainant resisted by curling into a ball, holding her arms around herself, and rolling her body. The complainant was able to get out of the home by saying she had to go to the bathroom, then

-1-

hiding, then running out of the door. Once outside the home, the complainant encountered her sister and friend, who noted the bruises and hand marks on her legs, as well as her state of upset and difficulty communicating. The complainant's grandmother contacted the police, and the complainant was examined at the hospital.

On appeal, defendant argues that two witnesses were improperly allowed to vouch for the credibility of the complainant, that the trial court erred by sentencing defendant when he was present only by video, and that his sentence of lifetime registration as a sex offender violates the prohibitions of cruel and unusual punishment under the United States and Michigan Constitutions. We agree that it was an error to sentence defendant without his physical presence at the hearing, but disagree with his remaining arguments.

## II. EXPERT TESTIMONY

Defendant did not object below to what he now asserts was improperly offered expert testimony. Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if plain error resulted in the conviction of an innocent defendant, or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted).

### A. FORENSIC INTERVIEWER

A forensic interviewer with the Children's Advocacy Center of Northeast Michigan, Sarah Hefele, testified that she interviewed the complainant. She also described her work with the center, and explained how a forensic interview is conducted. Hefele stated that trauma affects children by causing them to delay or recant their reports of abuse, and that trauma can cause a gradual remembering of the event in nonsequential order that could be triggered by external stimuli. Because there was no effort to have the trial court qualify her as an expert, Hefele's testimony was offered as lay opinion.

Lay witnesses may testify about the opinions they form as a result of direct physical observation. MRE 701; *People v Hanna*, 223 Mich App 466, 475; 567 NW2d 12 (1997). Such testimony is permitted where it is "rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness' testimony or the determination of a fact at issue." MRE 701.

Defendant argues that Hefele's statements were expert opinions that should not have been admitted because the trial court never qualified her as an expert. MRE 702 provides as follows:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Expert testimony is necessary when a factual determination requires an "analysis by a competent expert," with "knowledge in a particular area that belongs more to an expert than an ordinary person" and "such testimony will aid the factfinder in making the ultimate decision in the case." *People v Ray*, 191 Mich App 706, 707; 479 NW2d 1 (1991). In *People v Dobek*, 274 Mich App 58, 77; 732 NW2d 546 (2007), this Court held that a police officer's testimony about delayed disclosure of sexual abuse based on the officer's "knowledge, experience, and training . . . constituted expert opinion testimony and not lay opinion testimony under MRE 701 . . . ." In this case, we agree that Hefele's testimony about the effects of trauma on child victims of abuse was specialized knowledge offered to assist the jury to evaluate the complainant's disclosure of her abuse. Accordingly, it was expert testimony, and the prosecutor should have been required to qualify Hefele as an expert in childhood trauma before eliciting that testimony. However, we further conclude that the error was harmless.

In both *Dobek*, 274 Mich App at 79, and *People v Petri*, 279 Mich App 407, 416; 760 NW2d 882 (2008), this Court held that it is harmless error for opinion testimony normally requiring a qualified expert to be admitted without so qualifying the witness when the record clearly indicates that the witness in question did in fact qualify as an expert. In the instant case, Hefele testified that the Children's Advocacy Center was a safe place to interview child victims of abuse, and that she had performed over 250 forensic interviews since she was hired in 2016. Hefele was trained in forensic interviewing by the Prosecuting Attorney's Association, had some advanced forensic interview training, and attended yearly conferences, and completed 24 hours continuing training each year to maintain her certification. Defendant has not disputed those credentials. Because of Hefele's training and experience in interviewing child victims of abuse, there can be little doubt that the trial court would have qualified her as an expert in the effects of trauma on the disclosure of sexual abuse had the court been asked to do so.

Defendant also argues that Hefele's testimony vouched for the complainant's credibility. Because credibility matters are determined by the jury, it is improper for a witness to provide an opinion on the credibility of another witness. *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014). It is likewise improper for a noncomplaining witness to offer an opinion or otherwise comment on whether a defendant is guilty. *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013).

An expert witness may testify about the general behavior of sexual abuse victims "for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim or to rebut an attack on the victim's credibility." *People v Peterson,* 450 Mich 349, 373; 537 NW2d 857 (1995). However, an expert may not vouch for the veracity of a victim. *Dobek*, 274 Mich App at 71.

In this case, Hefele did not provide an opinion on the veracity of the complainant's allegations. Although Hefele testified that she interviewed the complainant, the prosecutor did not ask Hefele to apply her knowledge of the effects of trauma on child victims' disclosures to that interview. In fact, what Hefele termed a "big one"—the delayed disclosure of abuse—was contrary to the complainant's report of abuse because the complainant disclosed the abuse to several persons beginning on the day that it occurred. Also contrary to Hefele's testimony was that the complainant did not recant her accusations. Hefele did testify that a victim may gradually disclose the details of an assault, which was similar to a police investigator's account that the

complainant gradually disclosed the abuse to her. However, this example of disclosing behavior concerned how trauma affects victims, not whether the victim's report was truthful. Hefele did not provide any opinion on the complainant's veracity, and was not asked to comment on how the investigating officer's description of the complainant's disclosure related to the truthfulness of what she disclosed.

## B. POLICE INVESTIGATOR

Defendant also argues that Officer Linnessa Mellberg's testimony about how the complainant displayed characteristics of trauma was inadmissible expert testimony. Officer Mellberg testified that she had attended several training sessions specific to sexual-assault crimes, including how a victim reacts to the trauma. She stated that she was called to the complainant's home regarding an assault, and spoke with the complainant. The prosecutor asked Mellberg whether the complainant was displaying any of the characteristics that she had learned about in her training, and Mellberg responded as follows:

> She was giving me very little information when I was trying to talk to her about what took place. . . . I was told condoms were thrown. So at that point it clicked. Okay, something sexual must have occurred. The marks. It struck in my brain, okay, there was numerous people around. She's not gonna [sic] talk.

> As a victim a lot of the kids, the teenagers, they don't want to talk with even—and the families [sic] right there. She had siblings there. Her grandmother's there. I wrote in my notebook. I wrote down sexual assault, question mark. And I put it next to her and I said did this happen? I was told yes. And then based off the rest of the injuries I asked her if she was okay. If she needed medical attention. I was told no.

Mellberg's testimony that the complainant provided information gradually was not specialized knowledge that required qualification as an expert. The prosecutor did not ask Mellberg about the characteristics of victims of abuse, or about how trauma affects victims. Mellberg did not delineate anything she may have learned in her training. The prosecutor's question concerned whether Mellberg, during her interview with the complainant, observed any indications of trauma that she had learned of in her training. In *People v McLaughlin*, 258 Mich App 635, 657-658; 672 NW2d 860 (2003), this Court held that testimony regarding "observations and findings" made during an interview was lay opinion testimony. As noted, lay witnesses may offer opinions formed as a result of direct physical observation, and lay opinion testimony is permitted where it is "rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness' testimony or the determination of a fact at issue." MRE 701. Mellberg explained why she conducted the interview as she did, including her decision to call an ambulance. Mellberg did not provide technical or scientific testimony concerning the complainant's traumatized state by reference to typical patterns of behavior. Accordingly, Mellberg offered only lay testimony. See *Petri*, 279 Mich App 415-416.

Defendant argues that Officer Mellberg improperly vouched for the complainant's veracity by informing the jury that the complainant exhibited the behavior of a traumatized victim. However, Mellberg neither stated that she believed what the complainant reported, nor specified

how her training and knowledge of abuse victims applied to her interaction with the complainant. Accordingly, Mellberg's testimony did not vouch for the complainant's truthfulness.

## III. SENTENCING HEARING

A criminal defendant has a right to be present at any "stage of trial where the defendant's substantial rights might be adversely affected," including when a sentence is imposed. *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984). MCR 6.006(A) provides trial courts with the discretion to conduct several proceedings with the defendant appearing by way of videoconferencing, including sentencing for a misdemeanor conviction. In *People v Heller*, 316 Mich App 314, 317-318; 891 NW2d 541 (2016), this Court held that sentencing for felony offenses cannot properly be held via two-way interactive technology because of its exclusion from MCR 6.006(A), and that "virtual appearance is not a suitable substitute for physical presence" at a stage of trial at which a defendant has a constitutional right to be present.

A defendant may waive the right to be present at sentencing. *People v Palmerton*, 200 Mich App 302, 303; 503 NW2d 663 (1993). A valid waiver of that right "arises when the defendant specifically knows of the right to be present and intentionally abandons the protection of that right." *Id*. However, "[a] valid waiver cannot be established from a silent record." *Id*. In this case, the parties agree that there is no evidence that defendant waived his right to be present at his sentencing. Defendant, his attorney, the prosecutor, and the complainant participated in the sentencing through videoconference technology.

Plaintiff concedes that the trial court erred by conducting the sentencing hearing without defendant's physical presence and without establishing defendant's waiver of that right on the record. However, plaintiff also points out that this appellate objection is unpreserved, and argues that defendant cannot show that his not being physically present at sentencing resulted in any prejudice to him. We agree that prejudice is not immediately apparent from the record. At sentencing, defense counsel stated that he had reviewed the presentence investigation report with defendant, and also successfully objected to the scoring of a sentencing guidelines variable. Defense counsel further argued for a below-guidelines sentence based on a rejected plea offer, defendant's age, and his background. Defendant himself, during his remote allocution from the jail, apologized to the trial court, his attorney, and the complainant for having put them through the rigors of trial.

Plaintiff further argues that any concerns that defendant received "harsh treatment" or was "dehumanized," see *Heller*, 316 Mich App at 317-320, were assuaged because the trial court expressed compassion for defendant and wished him well in his rehabilitation. However, under *Heller*, the sentencing hearing with defendant appearing remotely constituted plain error that affected defendant's substantial rights.

We note that, as in this case, this issue in *Heller* was unpreserved, but this Court remanded for resentencing even so. *Id*. at 315-316, 321. Most significantly, this Court held that the defendant's "absence from the sentencing nullified the dignity of the proceeding and its participants, rendering it fundamentally unfair." *Id*. at 321. We further note that this Court did not base this conclusion on the particular procedures attendant to the defendant's remote sentencing. This Court elaborated as follows:

The medium itself—here, videoconferencing from a jail—delivers content of its own. That content, in turn, influences the perceptions of the participants. Abundant social science research demonstrates that video conferencing as a mediating technology may color a viewer's assessment of a person's credibility, sincerity, and emotional depth. Some studies suggest that individuals who appear in court via video conferencing are at risk of receiving harsher treatment from judges or other adjudicators. Courts, too, have recognized that virtual reality is rarely a substitute for actual presence and even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it. Alternatively phrased: In the most important affairs of life, people approach each other in person, and television is no substitute for direct personal contact. Video tape is still a picture, not a life.

Sentencing is more than a rote or mechanical application of numbers to a page. It involves a careful and thoughtful assessment of the true moral fiber of another, a task made far more complex when the defendant speaks through a micro-phone from a remote location. [*Id.* at 320-321 (quotation marks, citations, and alterations omitted).]

The concerns addressed in *Heller* apply to this case. Accordingly, without a valid waiver by defendant, it was plain error for the trial court to conduct a sentencing hearing without defendant physically present, and the plain error "seriously affected the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Carines*, 460 Mich at 763 (quotation marks, citation, and alteration omitted). Therefore, resentencing is required.

We do not address defendant's additional arguments that the sex offender registration requirement under The Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, is cruel and/or unusual punishment under the Michigan Constitution and United States Constitution because we conclude that resentencing is required and defendant can raise these arguments during his resentencing.

Affirmed, but remanded for resentencing. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Michelle M. Rick