*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONALD MCCRORY III,

Defendant-Appellant.

UNPUBLISHED
December 17, 2024
11:30 AM

No. 367537
Macomb Circuit Court
LC No. 2022-001020-FC

Before: YOUNG, P.J., and M. J. KELLY and FEENEY, JJ.

YOUNG, P.J. (*concurring*)

I write separately from my colleagues because it was error to admit Sergeant Wright's testimony identifying McCrory at the Broadway Market. However, I cannot conclude the inadmissible portion of Sergeant Wright's testimony more probably than not resulted in the verdict against McCrory. I concur in the result.

To start, I agree that the standard of review is for an abuse of discretion. The trial court abused its discretion by allowing Sergeant Wright's testimony identifying McCrory in the Broadway Market footage.

To reach this conclusion, I agree with the majority and trial defense counsel that we must first turn to *People v Fomby*, 300 Mich App 46; 831 NW2d 887 (2013). Fomby was convicted of first-degree felony murder, armed robbery, and carjacking. At Fomby's trial, Sergeant Ron Gibson was presented with six still photos captured from a surveillance video. Using the still shots, Gibson identified one photo as depicting "the person in the video who was holding the shotgun" and a separate still photo as " . . . the person grasping the victim [in the video]." *Fomby*, 300 Mich App at 49. Importantly, "Gibson never testified that any of the individuals depicted in either the still photographs or the surveillance video was [the] defendant." *Id*. This Court held that this testimony was "rationally based on [Gibson's] perception" and that Gibson's testimony "could help the jury discern correctly and efficiently[1] the events depicted in the videotape." *Id*. at 52. Finally, this Court observed that "Gibson's testimony did not invade the province of the jury" because "Gibson

---

[1] The jury was provided with six hours of video in *Fomby*.

did not identify [the] defendant in the video or still images." *Id.* at 53. Rather, "Gibson's testimony only linked individuals depicted in the surveillance video as being the same individuals depicted in the still photographs." *Id.*

I agree with the majority that here, like in *Fomby*, "the sergeant's testimony is rationally based upon his own perception that came as a result of his personal history with McCrory." I also agree that Wright's testimony was unquestionably helpful to the jury. In particular, the majority observes that the poor quality of the surveillance video makes the sergeant's testimony helpful. In *Fomby*, however, there is no discussion of, let alone a conclusion that, a police officer's view of what is objectively poor-quality video footage is somehow superior to the perspective of members of the jury. Other case law contemplates that this type of testimony is helpful where the footage was somewhere in between "so unmistakably clear" and "so hopelessly obscure." *United States v Rodriguez-Adorno*, 695 F 3d 32, 40 (CA 1, 2012). Having reviewed the footage, I believe it to be somewhere in this range, where a person with prior knowledge of one of the individuals could spot them from the video. This, too, favors the admission of the sergeant's testimony.

Where the majority and I part ways is as to the third consideration in *Fomby*. At trial Sergeant Wright is asked, after viewing surveillance video from Broadway Market, "were you able to make an identification of someone that was walking in?" Sergeant Wright responds that he was, and that person was McCrory. This moment differentiates this case from *Fomby*. *Fomby* made much of the fact that the testifying officer there did not identify the defendant as present in the surveillance footage. Here, Sergeant Wright did just that.

The majority concludes that this does not invade the province of the jury because the Sergeant never testifies as to McCrory's guilt or innocence. Technically, Sergeant Wright's testimony only identifies McCrory as present at Broadway Market at the same time as Lewis and Lewis' initial attacker. But how is that different than *LaPierre*[2] on which our *Fomby* decision relied? In *LaPierre*, the testifying officer identified LaPierre in a bank surveillance still photograph. *LaPierre*, 998 F2d at at 1465. The reviewing court determined this was error because "whether the person sitting before the jury was the one pictured in the surveillance photographs was a determination properly left to the jury." *Id.* Here, like *LaPierre*, McCrory is identified from surveillance on the scene at the right time with the right parties. Because Sergeant Wright's testimony contradicts both *LaPierre* and *Fomby*, allowing Sergeant Wright to identify McCrory in surveillance footage fell outside the bounds of reasonable outcomes. Admitting this testimony was error, and this issue being preserved, Sergeant Wright's inadmissible testimony must more probably than not have resulted in the verdict against McCrory. *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999).[3]

---

[2] See *United States v LaPierre*, 998 F2d 1460 (CA 9, 1993).

[3] The continued viability of this test is at issue in a case to be heard in December 2024 in the Michigan Supreme Court. *See People v Nelson*, ___ Mich ____; 4 NW3d 350 (2024); See also Michigan Courts News Releases, *Michigan Supreme Announces Court December Oral Argument Schedule* (November 25, 2024), <https://www.courts.michigan.gov/news-releases/2024/november/supreme-court-announces-december-oral-argument-schedule/> (accessed December 10, 2024).

Here is where we have to consider the other testimony from Sergeant Wright and any other identification testimony against McCrory. Sergeant Wright did offer some other testimony besides the surveillance footage narration. Specifically, McCrory's Instagram name was tagged in a video within 24 hours of the carjacking, wherein McCrory is still in all black clothing, still with a ski mask (this time pulled down), and with some of the codefendants and a black handgun. Sergeant Wright captured screen shots of this video and those screen shots, along with his explanation of the video, were presented to the jury.[4] If we were to exclude the problematic surveillance footage narration, the jury would still have the raw surveillance footage itself together with these screen captures that identify McCrory, place him with the known codefendants, show him wearing the exact same ski mask and clothing that fits Lewis' description of his assailant, and with constructive possession of a black handgun like that used in this carjacking. Because of this, I cannot say that more probably than not, the impermissible testimony resulted in the verdict against McCrory.

I concur in the result.

/s/ Adrienne N. Young

---

[4] Arguably, Sergeant Wright's testimony surrounding this evidence, too, is problematic, given that it relayed to the jury that he began following McCrory on social media because of McCrory's presumed gang membership. However, as observed by the majority, the problems with this aspect of Sergeant Wright's testimony were not adequately briefed by appellate counsel.

3