# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANIEL FRANKLIN WARFORD,

        Defendant-Appellant.

UNPUBLISHED
December 7, 2017

No. 334997
Oakland Circuit Court
LC No. 2015-257083-FC

Before: JANSEN, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of armed robbery, MCL 750.529. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 12 to 30 years' imprisonment. We affirm.

This appeal arises out of the armed robbery of a pharmacy located in Waterford Township, Michigan. Defendant was seen on a surveillance videotape hanging around the pharmacy until all other customers had left. Defendant then approached the pharmacy counter, stated that he was armed, and demanded that pharmacy manager, Adam Twarkowski, hand over all of the hydrocodone that the pharmacy had in stock. Twarkowski responded that the pharmacy had not received any hydrocodone in its last shipment. Defendant then demanded all of the pharmacy's oxycodone, but Twarkowski responded that the pharmacy did not have any oxycodone either. Defendant told Twarkowski, "I believe you," and left. Defendant was convicted at a jury trial, and he now raises several issues on appeal, all of which we find to be unpersuasive.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel when (1) defense counsel failed to object to the testimony of Michigan Department of Corrections Officer Tracy Swan, who testified that at the time of the robbery, defendant had absconded from parole, (2) defense counsel impermissibly shifted the burden of proof to his own client, suggesting that defendant had "not done enough to create reasonable doubt," and (3) defense counsel's comments improperly critiqued defendant's decision not to testify on his own behalf. In each instance, we disagree.

-1-

To preserve a claim of ineffective assistance of counsel on appeal, a defendant must move for a new trial or request a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant did not move for a new trial or request a *Ginther* hearing in the trial court. Accordingly, because no factual record has been created on which this Court may evaluate defendant's claim of ineffective assistance of counsel, this issue is unpreserved. *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Id*. at 187 (citation omitted). Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id*. at 188. However, where no factual record has been created in regard to defendant's claim of ineffective assistance of counsel, as is the case here, "this Court's review is limited to mistakes apparent on the lower court record." *Id*.

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is a defendant's burden to prove "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188, citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011), citing *Strickland*, 466 US at 694-696. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that defense counsel's performance fell below an objective standard of reasonableness when he failed to object to Swan's testimony that defendant was a parolee and had absconded from parole. Defendant claims that if defense counsel had prevented the jury from hearing this evidence, there is a reasonable probability that the result of defendant's trial could have been different. We conclude that based on these facts, the mention of defendant's status as a parolee was not improper. However, defense counsel's failure to object to testimony that defendant had absconded from parole fell below an objective standard of reasonableness. Regardless, defendant is unable to make the requisite showing of prejudice. *Solloway*, 316 Mich App at 191. For that reason, defendant's claim is without merit.

Generally, evidence of defendant's prior convictions, including his status as a parolee, is prejudicial due to the danger that a jury will "misuse prior conviction evidence by focusing on the defendant's general bad character[.]" *People v Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988). However, a defendant's status as a parolee is not necessarily improper under MRE 404(b)(1), particularly where it is not propensity evidence. *People v Denson*, 500 Mich 385, ___; 902 NW2d 306, 314 (2017) (stating that "evidence of other crimes, wrongs, or acts is inadmissible to prove a propensity to commit such acts," but it may be admissible for another purpose, such as identity). At trial, Swan testified that she was working at the Waterford Township Police Department when she heard a report of an armed robbery over the police radio.

The description of the suspect matched that of defendant. Swan was familiar with defendant because she had been his parole officer for over a year. Accordingly, it is clear that Swan's testimony regarding defendant's parole status was not offered as propensity evidence; rather, it was offered to explain how Swan was able to identify defendant from his description over the police radio. Accordingly, defense counsel did not have to object to the mere mention of defendant's status as a parolee.

However, Swan's testimony that defendant had absconded from parole at the time of the armed robbery was inadmissible propensity evidence. Underlying the rule against the admission of propensity evidence is the concern that a jury "will convict the defendant inferentially on the basis of his bad character rather than because he is guilty beyond a reasonable doubt of the crime charged." *People v Watkins*, 491 Mich 450, 468; 818 NW2d 296 (2012) (citation omitted). There was no proper purpose to introduce evidence that defendant had absconded. Instead, Swan's testimony could have allowed the jury to infer that because defendant had absconded parole at the time of the armed robbery, defendant not only had a criminal history, but also had a propensity for disregarding the law and committing crimes while on parole. Defense counsel should have raised an objection to this testimony and requested that the trial judge issue a curative instruction to the jury. To this extent, defense counsel's failure to do so fell below an objective standard of reasonableness.

Regardless, defendant is unable to prove that but for defense counsel's error, there is a reasonable probability that the outcome of defendant's trial would have been different. *Solloway*, 316 Mich App at 200, 202. Even without the propensity evidence, there is ample evidence identifying defendant in the armed robbery. Charles Lee Parks, with whom defendant was living, testified that he had dropped defendant off at the pharmacy shortly before the robbery took place. Both Twarkowski and pharmacy technician Danielle Ross testified that defendant approached the counter, indicated that he was armed, demanded hydrocodone and oxycodone, and then left without incident. Defendant himself admitted during a police interview that he had been at the pharmacy and was frustrated when Twarkowski refused to fill a prescription for hydrocodone. Additionally, Swan identified defendant on the surveillance video, and defendant himself admitted that he had written a note that was found in the pocket of his Michigan Department of Corrections (MDOC)-issued coat after his arrest. That note read:

> This is not a joke. Remain calm and nobody will be harmed. You will fill this bag with Hydrocodone and Oxycodone and you will do it quickly. If at any moment you attempt to summon help, I will be forced to use violence to accomplish my objective. Do yourself a favor and follow my rules and move quickly. Move quickly, and do your best not to draw attention to yourself. I am armed and would prefer not to use unnecessary force. Fill the bags to the brim. Do not attempt to summon help. Work alone.

Based on the foregoing, it would be unreasonable to assume that the jury convicted defendant based on Swan's testimony that at the time of the robbery, defendant had absconded parole. Accordingly, defendant is not entitled to a new trial on this ground.

Defendant also argues that he was denied the effective assistance of counsel because his defense counsel made improper remarks during closing argument that improperly shifted the burden to defendant and negatively critiqued defendant's decision not to testify. We disagree.

This Court has previously recognized that the content of closing argument is trial strategy, and this Court does not second guess trial strategy, except for when that strategy was unreasonable or unsound. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008); *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).

Defendant argues that his counsel was ineffective for stating the following during closing argument:

[The prosecutor] wanted to talk about the note. Conveniently, that's on the screen. He's really -- [defendant] admits to writing it. But does anyone on this stand, and can anyone tell you when it was written? One person. Because there's nothing in the record, [Twarkowski] denies ever seeing it. He's never seen it.

* * *

The piece of paper that you see in the video, there's no testimony. There's nothing on this record. Nothing the past two days that have been said that says that that was the note. They want you to believe that. They want you to believe that he's walking around rehearsing.

* * *

[Y]ou cannot assume that the note and the piece of paper are the same thing. You cannot assume that he wrote the note before walking into [the pharmacy].

Defendant claims that by making these statements, defense counsel erroneously insinuated that defendant "had a duty to present evidence to defend himself, and suggested a negative inference from his failure to do so." Defendant claims that this statement was a "ubiquitous misrepresentation" of defendant's burden of proof and misled the jury by inferring that defendant had "not done enough to create reasonable doubt." Defendant also contends that defense counsel's statement was inappropriate commentary regarding defendant's choice not to testify on his own behalf at trial. These arguments are without merit.

When defense counsel's comments are viewed in context, it is clear that they were made to dispute that the "robbery note" found in the pocket of defendant's MDOC-issued coat was not the same note that could be seen in defendant's hand on the surveillance videotape just before the robbery. Essentially, defense counsel was attempting to cast reasonable doubt on the fact that defendant had a robbery note in his coat during the robbery. Defense counsel's statements did not shift the burden of proof or ask the jury to make inferences of guilt regarding defendant's decision not to testify on his own behalf. Instead, the statements were meant to persuade the jury that defendant never threatened Twarkowski; instead, defendant wrote the note after the fact once he became frustrated that he could not obtain the prescription drugs. The fact that defense counsel's strategy ultimately failed does not require the conclusion that defense counsel was ineffective, *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001), and

defendant has not overcome the presumption that defense counsel's argument was sound trial strategy, *Horn*, 279 Mich App at 39; *Cline*, 276 Mich App at 637.

Moreover, assuming that defense counsel's statements had fallen below an objective standard of reasonableness, defendant cannot make the requisite showing of prejudice. *Solloway*, 316 Mich App at 191. The trial court instructed the jury that the attorneys' arguments were not evidence, and that it was the prosecution's burden to prove defendant guilty beyond a reasonable. Also, the jury was instructed that defendant had a right not to testify on his own behalf at trial, and the fact that he did not testify was not to be considered and should not affect the jury verdict in any way. This Court presumes juries follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Defendant's claims of ineffective assistance of counsel are without merit.

## II. OPINION TESTIMONY

Defendant argues that when Swan testified that she recognized defendant on the surveillance video, she impermissibly invaded the province of the jury. We disagree.

To preserve an evidentiary issue for appeal, the party opposing the admission of the evidence must object at trial and specify the same grounds for the objection on appeal. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001); MRE 103(a)(1). Defendant failed to object to Swan's testimony at trial. Therefore, this issue is unpreserved.

Generally, evidentiary issues are reviewed for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). However, this Court reviews unpreserved claims of evidentiary error, as is the case here, for plain error affecting a defendant's substantial rights. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). To establish plain error, a defendant must show: "1) [the] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). Generally, to show the error affected substantial rights, it must be proven "that the error affected the outcome of the lower court proceedings." *Id.* (citation omitted).

"It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998). However, lay witnesses, such as Swan, may give opinion testimony when that testimony is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based in scientific, technical, or other specialized knowledge within the scope of Rule 702." MRE 701. In fact, this Court has previously determined that in criminal matters, lay witnesses, such as police officers, may give testimony regarding their observations and the opinions they "formed as a result of those observations." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), modified and remanded on other grounds 433 Mich 862 (1989). However, "where a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v Drossart*, 99 Mich App 66, 80; 297 NW2d 863 (1980); see also *Freed v Salas*, 286 Mich App 300, 346-347; 780 NW2d 844 (2009) (citing *Drossart* for the same proposition).

Here, as the prosecution points out, Swan's identification of defendant on the surveillance videotape helped lead to defendant's arrest. Importantly, Swan's testimony provided information to the jury that it would not have known otherwise. Swan's opinion that defendant was the individual seen on the surveillance videotape was based upon her own personal experiences, namely, the fact that she had been defendant's probation officer for over a year, recognized the MDOC coat that defendant was wearing in the video, and recognized defendant's distinct features, including his glasses.

In *People v Fomby*, 300 Mich App 46, 52-53; 831 NW2d 887 (2013), this Court held that a testifying police officer did not invade the province of the jury when he testified and compared multiple edited still frames to the surveillance video. *Id*. at 53. The police officer testified that based on his comparison of the two, the individuals in the stills and video were the same, and we held that because the officer created and edited the stills from the six-hour video, he was in a better position than the jury to identify the individuals. *Id*. Because the testimony was "rationally based on his own perception" and was "helpful for the jury," this Court held that the testimony was admissible. *Id*. The same conclusion can be reached here. Swan's opinion did not invade the province of the jury. Instead, she offered information that would not have been readily discernable from simply watching the video. She was, therefore, in a better position to identify defendant than the jury, and accordingly, Swan's testimony was admissible at trial.

Even if Swan's testimony was improper, defendant cannot show that its admission amounted to plain error affecting defendant's substantial rights such that the outcome of defendant's trial would have been different. *Carines*, 460 Mich at 763. Even without Swan's testimony, the prosecution presented enough evidence for the jury to have found, beyond a reasonable doubt, that defendant was the individual on the surveillance videotape. In the videotape of defendant's police interview played for the jury, defendant is heard admitting that he was at the pharmacy, and that, by defendant's account, he had a heated exchange with Twarkowski about the pharmacist's inability to fill the hydrocodone prescription. Defendant could also be observed on the surveillance videotape reading a piece of paper, and a note demanding hydrocodone and oxycodone was later found in defendant's MDOC-issued coat. Accordingly, assuming that Swan's testimony was improper, defendant's evidentiary claim still fails. *Carines*, 460 Mich at 763.

III. PROSECUTORIAL MISCONDUCT

Finally, defendant objects to the prosecutor's statement during rebuttal that the trial would have been "a lot shorter, if [defendant] would have owned up to being in the store[.]" Defendant argues that this statement amounted to prosecutorial misconduct because it invited the jury to convict defendant. We disagree.

To preserve a claim of prosecutorial misconduct for appeal, "a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010) (citation omitted). Defendant did not raise any contemporaneous objection to the prosecutor's rebuttal argument, or request a curative instruction. Therefore, this issue is unpreserved. "Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

"Because the alleged error was not preserved by a contemporaneous objection and a request for a curative instruction, appellate review is for plain (outcome-determinative) error." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003) (citation omitted).

This Court cannot review the prosecutor's statements in isolation. Rather, prosecutorial statements must be evaluated in context to defense counsel's arguments. *Brown*, 279 Mich App at 135. Statements made by the prosecutor may not "require reversal if they respond to the issues raised by the defense." *Callon*, 256 Mich App at 330. During defense counsel's closing argument, he commented that

> we spent a lot of time in this trial worrying about the identification of [defendant] only to get to the point where he admits being in [the pharmacy]. He's never disputed that. He told the detective the truth. I was -- yeah, I was in [the pharmacy]. Maybe not in those terms, but yeah, I was in [the pharmacy] looking for a bag.

The prosecutor's comment *during rebuttal*, i.e., that the trial could have been shorter if defendant had admitted to being in the pharmacy, was clearly made in response to defense counsel's closing argument. It was likely made to explain why the prosecution spent a great deal of time at trial establishing that defendant had been dropped off near the pharmacy, went inside, and had been identified by Swan on the surveillance videotape. Accordingly, when reviewed in context and in conjunction with defense counsel's closing argument, the prosecutor's comment did not rise to the level of prosecutorial misconduct.

Further, defendant cannot satisfy his burden of showing that the prosecutor's comment resulted in a miscarriage of justice. *Brown*, 279 Mich App at 134. Indeed, the jury was instructed that the attorney's arguments were not evidence, and this Court presumes that juries follow their instructions. *Graves*, 458 Mich at 486. Even if the prosecutor's statement had been prejudicial, a contemporaneous objection and a curative instruction would have alleviated any undue prejudice. *Bennett*, 290 Mich App at 476. Defendant's claim of prosecutorial misconduct is, therefore, without merit.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron