*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 17, 2020

Plaintiff-Appellee,

v

Nos. 347091; 347092
Menominee Circuit Court
LC Nos. 18-003932-FH; 18-003933-FH

WILLIAM CHARLES RULEAU,

Defendant-Appellant.

Before: REDFORD, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant, William Charles Ruleau, appeals as of right his jury convictions of breaking and entering a building with intent to commit a larceny, MCL 750.110(1), and possession of burglar's tools, MCL 750.116.[1] The trial court, applying a fourth-offense habitual offender enhancement under MCL 769.12, sentenced defendant to 6 to 30 years in prison for breaking and entering and to a concurrent term of 5 to 30 years in prison for possession of burglar's tools. We affirm.

Defendant's convictions arose from a breaking and entering that occurred at a woodworking business in Menominee in September 2017. The perpetrator broke into a building, used a tire iron or crow bar to break into cabinet drawers, and stole approximately $800. A surveillance-video system captured the perpetrator committing the crimes, although the quality of the video was not particularly good. The dispute at trial centered on whether defendant, who had long hair and a long beard at the time of trial, was the clean-shaven perpetrator captured in the surveillance video. The prosecutor presented testimony from defendant's first cousin, Gregory Ruleau (Gregory), that the person in the video was, in fact, defendant.

---

[1] The two charges were assigned separate lower court docket numbers, but a single trial took place. The appellate briefs filed in Docket Nos. 347091 and 347092 are identical. This Court consolidated the appeals for administrative efficiency. *People v Ruleau*, unpublished order of the Court of Appeals, entered January 22, 2019 (Docket Nos. 347091 and 347092).

## I. ADMISSIBILITY OF IDENTIFICATION TESTIMONY

Defendant first contends that the trial court erred by allowing Gregory's identification testimony at trial because Gregory was no more capable than the jury of identifying the perpetrator in the video. We disagree. We review for an abuse of discretion a trial court's decision regarding the admission of evidence. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). We review de novo, as a preliminary question of law, whether a rule precludes admission of evidence. See *Denson*, 500 Mich at 396.

The admissibility of Gregory's testimony is governed by MRE 701, which states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The federal evidentiary rule corresponding to MRE 701 is worded nearly identically to MRE 701; thus, federal precedent could be looked to in analyzing the Michigan rule. *People v Fomby*, 300 Mich App 46, 50; 831 NW2d 887 (2013). In *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9, 1993), the Ninth Circuit Court of Appeals stated that lay opinion testimony regarding the identity of a person in a photograph is permissible in two types of cases: those in which the witness has had substantial and sustained contact with the person in question, or those in which the person's appearance differs in the photograph from how the person looks in court and the witness is familiar with the person's appearance as depicted in the photograph. See also *Fomby*, 300 Mich App at 52. " 'The common thread binding these two types of cases is that in both there is reason to believe that the witness is more likely to identify correctly the person than is the jury.' " *Id*., quoting *LaPierre*, 998 F2d at 1465. The case at bar involves both scenarios.

The prosecutor sought a pretrial ruling regarding the admissibility of Gregory's identification testimony. At the pretrial hearing, Gregory averred that he had known defendant, his first cousin, since defendant was born. He testified that defendant "grew up right next door to us" and that "[h]is parents lived next door to my parents" for about 10 years. He also testified that they worked together one summer on a fishing boat used in the company co-owned by their fathers and captained by Gregory. Defendant and Gregory worked off and on in the business until defendant was about 17 years old. Under questioning by the court, Gregory testified that he and defendant did not have a relationship after defendant moved from home; he would see defendant occasionally, perhaps less than twice a year, but did not approach him. Gregory said he saw defendant at defendant's father's funeral and at a family fishing event, both in the 1990s, and that he had seen defendant walking near the courthouse in the summer of 2016. Gregory stated that he was now 63 years old and defendant was now in his mid-fifties. In September 2017, a police officer showed up at Gregory's door with video footage and asked if Gregory could identify the person in the footage. Gregory said that he "knew right away," within "five seconds," that the person was defendant. He claimed that it was not possible that it was someone else on the video and that he was "100 percent sure" that it was defendant. Defense counsel asked what distinguishing characteristics of the person in the video stood out, and Gregory mentioned

defendant's "profile" and his "big nose." Gregory said that the police made no suggestion regarding who was in the video and that he had initially thought the video was related to a recent break-in at his own home. The court asked if defendant looked different in the video than he looked in court during the hearing, and Gregory said that in the video, defendant did not have as much head or facial hair and agreed that defendant "looks quite a bit different on the video than he does in court here today."

The trial court's ruling regarding the admissibility of Gregory's testimony aligns with *LaPierre*. Gregory had substantial and sustained contact with defendant, and defendant looked different in the video and the still photographs derived from it than he did at the time of the proceedings, and Gregory was familiar with how defendant looked in the video (i.e., without as much hair). See *LaPierre*, 998 F2d at 1465.

Defendant contends that Gregory's contact with defendant was too attenuated in time to be admissible. However, the record shows that the trial court considered whether the passage of time and other circumstances necessarily extinguished Gregory's heightened ability to identify someone, in this instance his cousin, with whom he had had sustained and substantial contact. Gregory testified at the hearing that, although he and defendant had had a good relationship and spent a lot of time together 30 years ago, he had had little contact with defendant since 1998. He admitted that the two did not have a good relationship, but stated, "I'm not interested in causing anybody any harm." Asked how he was able to identify defendant in the video, Gregory answered, "Well I've known him since he was born, and, I mean, I can tell who it is right now very well, so if you're around somebody a long time, I think, they don't change that much."

Defendant next contends that even if Gregory's identification testimony was otherwise admissible, it should have been excluded under MRE 403 because Gregory's testimony was only marginally probative and was unfairly prejudicial because a jury would give undue weight to an identification by a blood-relative. We disagree.

Generally, all relevant evidence is admissible unless prohibited by the state or federal constitution or Michigan's rules of court. MRE 402. Relevant evidence is evidence having any tendency to make the existence of a fact of consequence more or less probable. MRE 401. However, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" MRE 403. Evidence is probative if it makes the existence of a consequential fact more probable than it would be without the evidence. *People v Feezel*, 486 Mich 184, 197; 783 NW2d 67 (2010). Evidence may be unfairly prejudicial if marginally probative evidence will be given undue weight by the jury. *Id*. at 198.

Identity is an element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Thus, Gregory's testimony was more than marginally probative; it was *highly* probative. Indeed, defendant himself admits that it is not easy to determine that the person on the surveillance video is defendant. Gregory's testimony was, therefore, a key part of the prosecutor's case. With regard to prejudice, the trial court noted that defense counsel would be able to offset any "potential prejudice" arising from the weight the jury might give Gregory's identification testimony "by questioning [Gregory] regarding the extent of his contact with [defendant] as well

as any possible bias or hard feelings that may exist between the two individuals[.]"[2] Given the highly probative value of Gregory's identification testimony and the opportunity of defense counsel to counter any potential undue prejudice by cross-examining Gregory regarding the infrequency of his recent contact with defendant and the nature of their relationship, we cannot say that the probative value of Gregory's identification testimony was "substantially outweighed" by the danger of unfair prejudice, MRE 403.

In light of the foregoing analysis, we conclude that the trial court did not misapply the relevant court rules, and that the court's decision to admit Gregory's identification testimony did not fall outside the range of principled outcomes. *Watkins*, 491 Mich at 467. Accordingly, the trial court did not abuse its discretion by admitting the testimony. *Id.*

## II. INSUFFICIENCY OF THE EVIDENCE

Defendant next contends that the prosecutor presented insufficient evidence at trial to prove that he was the perpetrator of the charged crimes. Once again, we disagree. We review "de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id.*

Defendant concedes that the prosecutor presented sufficient evidence that *someone* committed the two charged crimes, but he contends that the prosecutor failed to present sufficient evidence that *he* was the perpetrator depicted on the surveillance video. The jury watched the video and heard Gregory testify that defendant was the person depicted in that video. Gregory's testimony, if believed, and the surveillance video were sufficient in themselves to establish defendant's identity as perpetrator of the charged crimes. Defendant contends that Gregory's testimony was not credible or weighty, but the credibility of witnesses and the weight to be afforded evidence are issues for the jury to decide. *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). Viewing the evidence of the video and Gregory's testimony in the light most favorable to the prosecution, *Lane*, 308 Mich App at 57, and leaving issues of credibility to the jury, *Harrison*, 283 Mich App at 378, we conclude that the prosecution presented sufficient evidence for the jury to identify defendant beyond a reasonable doubt as perpetrator of the charged crimes.

## III. STANDARD 4 BRIEF

Defendant raises additional issues in a supplemental brief filed *in propria persona*, pursuant to Michigan Supreme Court Administrative Order No. 2004-6, Standard 4.

---

[2] Defense counsel did indeed ask at trial if the two had a good relationship, and Gregory said, "No, we don't . . . talk."

A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first contends that his trial attorney rendered ineffective assistance of counsel by (1) failing to present three alibi witnesses; (2) failing to present evidence that Gregory was biased against defendant because he believed defendant had had an affair with his now-wife; (3) failing to present evidence that defendant had been mistakenly identified as a perpetrator of crimes three times in the past; and (4) failing to present evidence that the defense investigator showed the surveillance video at a local shelter and was told that the person in the video had just left the shelter the prior day.[3]

In *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000), this Court stated:

> In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing. Failure to move for a new trial or for a *Ginther*[4] hearing ordinarily precludes review of the issue unless the appellate record contains sufficient detail to support the defendant's claim. If review of the record does not support the defendant's claims, he has effectively waived the issue of effective assistance of counsel. Defendant failed to move for a new trial or file a motion for a *Ginther* hearing. Therefore, our review is limited to the appellate record. If the appellate record does not support defendant's assertions, he has waived the issue. [Citations omitted.]

Defendant did not file a motion for a new trial or evidentiary hearing regarding ineffective assistance of counsel. As such, this Court's review of the ineffective-assistance claim is limited to the appellate record. See *id*.

To obtain relief on the basis of ineffective assistance of counsel, a party "must show that counsel's performance fell short of [an] . . . objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the . . . trial would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks, citation, and brackets omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).

Defendant fails to support his ineffective-assistance arguments with any record evidence. A defendant has the burden of establishing the factual predicate for a claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Here, defendant's argument consists of unsupported assertions. With regard to defense counsel's alleged failure to investigate his alibi witnesses, defendant asserts that he told counsel about his alibi witnesses in letters, face-to-face conversation, and in a recorded phone call from jail. However, even if we assume for the

---

[3] Presumably, this alleged incident at the shelter occurred while defendant was incarcerated and awaiting trial, thus indicating that defendant could not be the person in the video.

[4] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

sake of argument that counsel failed to follow up, defendant has not presented affidavits from those witnesses he claims would have supported his alibi defense. Thus, defendant has not shown that the outcome of the trial would have been different, but for counsel's failure to investigate and present an alibi defense. See *Ackley*, 497 Mich at 389.

Likewise, defendant has provided no evidence of Gregory's belief regarding an affair, defendant's having been mistakenly identified in the past as a criminal, or the defense investigator's queries at the homeless shelter. Nor has defendant provided any argument regarding how proper investigation of these issues would have affected the outcome of his trial. Given the absence of factual support for defendant's contentions, defendant has failed to show either substandard representation or prejudice leading to a reasonable probability of a different outcome. *Id*. Accordingly, defendant's claim of ineffective assistance must fail. *Id*.

## B. BRADY VIOLATION

Defendant next argues that the prosecutor committed a *Brady*[5] violation by failing to disclose that the police did not obtain a match when they compared a still photograph from the surveillance video to defendant's booking photograph using SNAP[6] technology.[7] He also contends that the prosecutor improperly failed to disclose that the police showed the surveillance video to a number of people and they did not identify defendant as the person in the video. Because defendant failed to preserve these issues by raising them below, see *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), our review is for plain error affecting substantial rights, and reversal is warranted if a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A *Brady* violation occurs when "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) [that,] viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. at 150. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). An appellant bears the burden of furnishing a reviewing court with "a record to verify the factual basis of any argument upon which reversal" is predicated. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000); see also *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 540; 506 NW2d 890 (1993).

---

[5] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

[6] State Network of Agency Photos

[7] Defendant requested SNAP information before trial and was informed before trial of an e-mail indicating that no matches had been made when running a still photograph from the surveillance video through photographs in the SNAP database. On appeal, though, defendant is arguing that a SNAP analysis was done using the still photograph from the surveillance video and *just* defendant's booking photograph and that no match resulted.

Assuming arguendo the existence of the evidence to which defendant alludes, and that the prosecution failed to turn it over, defendant has not established materiality. See *Chenault*, 495 Mich at 150. In other words, there is no reasonable probability that, had the evidence defendant asserts exists been disclosed to the defense, the result of the proceeding would have been different. *Id*. Detective Sergeant Young emphasized in his trial testimony that the SNAP matching technology is imperfect and does not "work like it [does] on [television]." He noted that the matching software will be even less effective if one is using a poor-quality image from a surveillance video or using an image, such as the one at issue in this case, where someone is wearing a hat. He said that the technology is used to *possibly* obtain investigative leads. As such, that a still photograph taken from the surveillance video allegedly did not match defendant's booking photograph is not particularly exculpatory or surprising. And that various unnamed persons did not identify defendant from the surveillance video is not meaningful in the absence of any information regarding these persons' familiarity with defendant. Nor does it undermine the probative value of Gregory's identification testimony.

In light of the foregoing, we conclude that defendant has shown no entitlement to reversal in connection with the alleged *Brady* violations.

## C. SELF-INCRIMINATION

Defendant next argues that the trial court erred in admitting certain comments he made while being transported from Wisconsin to Michigan, and that such error deprived him of his right against self-incrimination. We disagree. This Court "review[s] for clear error a trial court's findings of fact in a suppression hearing, but review[s] de novo its ultimate decision on a motion to suppress." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009).

Miranda warnings are necessary when an accused is interrogated while in custody. *People v Herndon*, 246 Mich App 371, 395; 633 NW2d 376 (2001).[8] If a suspect is not given *Miranda*[9] warnings before a custodial interrogation, evidence obtained as a result of the interrogation cannot be used against the suspect. *People v Tanner*, 496 Mich 199, 207-208; 853 NW2d 653 (2014).

Following a hearing on defendant's motion to suppress the comments he made during transport, the trial court ruled that the comments were admissible despite the lack of *Miranda*

---

[8] Defense counsel based her motion to suppress on the assertion that defendant's comments were made without benefit of *Miranda*. Counsel abandoned this argument, however, and asserted at the hearing on her motion that any testimony regarding defendant's comments should be prohibited because, without a recording of the conversation, it was impossible to know exactly what defendant had said, and in what context. When asked by the trial court, counsel acknowledged that there was no legal requirement for the officers to turn on the patrol car's recording device. This admission seems to implicitly concede that there was no custodial interrogation during the transport.

[9] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

warnings because they were voluntary, did not result from police interrogation, and did not relate directly to the present case. Our review of the record reveals no error in this ruling.

Detective Sergeant Justin Hofer and Detective Sergeant Jason McGhee transported defendant to Menominee County. Hofer testified at the suppression hearing that he asked defendant if defendant wanted to speak to him, and defendant said "that he did not want to speak directly about the case, why we were there." As a result, the detective "did not read [the *Miranda* rights]" and did not activate any recording equipment. According to Hofer, defendant "just started talking to us" and "made . . . some comments that I documented in the police report." Asked if he could recall what comments defendant made, the officer replied, "I believe he made several comments about he could be going to prison for the rest of his life. He . . . also asked what more we had him on, and, I believe, he made mention about when he takes [benzodiazepines], he sometimes blacks out." Hoffer stated, "I never questioned him."

McGhee's testimony at the hearing corroborated that of Hofer. McGhee testified that Hofer told defendant that he would need to be advised of his *Miranda* rights if he wanted to discuss the case, and defendant said, " 'No, I'm not going to talk about that stuff.' " Defendant later said, " 'I'm gonna go to prison for the rest of my life.' " But McGhee indicated that defendant did not make this statement in response to any questioning. The detective stated that the officers did not read defendant his *Miranda* rights because "we didn't ask him a single question about anything . . . involving this case" and "these were just statements that he was talking [sic] the entire trip."

The trial court's finding that no interrogation had occurred during the police transport was not clearly erroneous in light of the testimony by Hofer and McGhee. Because no interrogation occurred, the *Miranda* requirement was not triggered. See *Herndon*, 246 Mich App at 395. Accordingly, defendant's argument on appeal fails. Moreover, to the extent that defendant is arguing on appeal that he made no statements to the police at all, this was contradicted by the detectives' testimony, and the court was allowed to accept this testimony in ruling on the motion to suppress.[10]

Defendant also challenges the trial court's ruling that the prosecution could use booking photographs of defendant taken during a prior arrest. According to the record, the potential problem with the booking photographs was not their appearance, but with how the prosecution would lay a foundation for their admission. Addressing the issue, the court said:

> The photographs themselves do not necessarily suggest that they're booking photographs. There's no law enforcement insignia in the background, there's no height charts – that type of thing. They're just plain color photographs, but it's my understanding that, in order to lay the proper foundation for those photographs, you

---

[10] In addition, defendant appears to suggest that the prosecutor improperly referred during closing argument to comments the defendant made during the transport from Wisconsin. The prosecutor's argument was permissible. A prosecutor may comment about evidence that was properly admitted, see *People v Bahoda,* 448 Mich 261, 282; 531 NW2d 659 (1995), and the detectives' testimony about defendant's statements was properly admitted.

would have to call sheriff's department personnel and establish that they were taken at the sheriff's department, and it's my understanding that [defense] Counsel is concerned that there's going to be some risk of tainting the jury by doing so. Is that a fair statement?

The prosecution agreed that this was a fair statement, and defense counsel explained that her sole concern was with how the photographs were going to come into evidence, and whether the testifying deputy would testify explicitly as to how the sheriff's department came to possess the photographs. Subsequently, the trial court indicated that it would enter an order stating that the photographs would be admissible on the condition that none of the witnesses were allowed to testify as to where the photographs came from, who took them, or where they were taken. The only foundational information the jury was allowed to hear was that they were from approximately December 2016. Defense counsel was still concerned that the jury would surmise that they were booking photographs if they were introduced during a deputy's testimony because it had been established that defendant had been picked up and was in custody in December 2016. After further discussion, the court suggested, and the parties agreed, that the prosecution could introduce the photographs through Gregory, asking simply if he recognized them and were they photographs of his cousin, defendant. Because defense counsel *stipulated* to the use of the photographs in this manner, defendant has established no plain error in connection with these photographs. *Carines*, 460 Mich at 763-764; *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (noting that a waiver extinguishes any error and precludes appellate view).

## D. OFFENSE VARIABLE 4

Lastly, defendant argues that the trial court erred in scoring offense variable (OV) 4 (psychological injury) of the sentencing guidelines. We disagree.

Defendant first contends that the trial court erred by considering the sentence-hearing testimony of Kari Bunting, the owner of the woodworking company at issue. Defendant asserts that the court's consideration of her testimony to score OV 4 violated the rule from *People v Lockridge*, 498 Mich 358, 393, 399; 870 NW2d 502 (2015), that sentencing variables must be scored using facts found by a jury or admitted by the defendant if they compel an increase in a defendant's minimum sentence. This argument lacks merit. Defendant was sentenced well after *Lockridge* remedied any constitutional violation connected with judge-found facts by making the guidelines advisory only. *Id*. at 365. There is no indication that the trial court, when sentencing defendant in 2018, did not follow the mandate of the 2015 *Lockridge* decision.

To the extent that defendant contends that the record evidence does not support the trial court's assessment of 10 points for OV 4, this argument also fails. A sentencing court's factual determinations under the sentencing guidelines are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Rodriguez*, 327 Mich App 573, 576; 935 NW2d 51 (2019). We review de novo, as a matter of statutory interpretation, whether the facts as found by the lower court are adequate to satisfy the scoring conditions prescribed by statute. *Id*.

OV 4 addresses "psychological injury to victim" and may be scored at either zero or 10 points. See MCL 777.34.[11] Ten points are appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). The fact that professional treatment has not been sought is not conclusive. MCL 777.34(2).

Bunting testified at the sentencing hearing that it had "been a very stressful and emotional year and a half since the break in" and that for approximately six months after the break-in, she would not go into the office by herself. She said she had had a lot of trouble sleeping for months after the event because she was worried about the possibility of another break-in. Bunting said she was currently sleeping "better," but there still were times when she did not sleep as well as she did before the break-in. She also said that she was somewhat "paranoid" and "worried" now and had experienced panic and anxiety after the break-in. She said that she was not planning on seeking professional help "at this point" but that she might do so "if things don't settle down more."

In light of Bunting's testimony about panic, paranoia, sleep problems, and the possibility of seeking counseling, we conclude that the trial court did not err in assessing defendant 10 points for OV 4. See, *People v Schrauben*, 314 Mich App 181, 197; 886 NW2d 173 (2016) (noting that the Court has upheld a trial court's assessment of 10 points for OV 4 where the victim "suffered personality changes, anger, fright, or feelings of being hurt, unsafe, or violated") (quotation marks and citation omitted).

We conclude that the trial court did not err in admitting Gregory Ruleau's identification testimony, that the prosecutor presented sufficient evidence for a jury to find beyond a reasonable doubt that defendant committed the charged crimes, and we find no merit in the arguments defendant raises in his standard 4 brief. According, we affirm in both appeals.

Affirmed.

/s/ James Robert Redford
/s/ Jane M. Beckering
/s/ Michael J. Kelly

---

[11] MCL 777.34 was amended by 2018 PA 652, effective March 28, 2019. The amendment does not affect the language at issue here.