*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BARRY LEE SAYLOR,

Defendant-Appellant.

UNPUBLISHED
November 30, 2023

No. 362020
Genesee Circuit Court
LC No. 21-047814-FC

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, and reckless driving causing death, MCL 257.626(4). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 40 to 80 years' imprisonment for the second-degree murder conviction and 18 to 40 years' imprisonment for the reckless driving causing death conviction. We affirm.

This case arises out of an incident that occurred on September 16, 2020, in the area of Euston Street and Freeman Avenue in Flint, Michigan. Defendant struck his former girlfriend, Emily Zudell, with his Buick Rendezvous (sometimes referred to as the Rendezvous or the vehicle) while she was a pedestrian, killing her. Testimony of witnesses in the neighborhood indicated that defendant was driving in excess of the speed limit of 25 miles an hour in this residential neighborhood and that he accelerated before going off the road and striking Zudell. One person who lived in the neighborhood, Grayson Brown, had surveillance video footage of the incident, which he provided to the police; and the jury viewed the footage multiple times at trial. After running over Zudell, defendant put her into his vehicle, drove away, dropped her off at a hospital, and immediately left the hospital. He then sold his vehicle to his nephew, who testified that he understood defendant was going to Florida. While being transported to jail after his arrest, defendant said that he had been arguing with Zudell, that he saw her sitting in the roadway, and that he drove at her but drove around her.

A short time before defendant ran over Zudell, some witnesses in the neighborhood saw defendant angrily arguing with Zudell outside, and one witness testified that defendant physically

-1-

struck Zudell's face with his hand during that encounter. Defendant lived in the neighborhood, and Zudell was involved in a relationship with another man who lived in the same neighborhood.

A certified mechanic determined that the brakes of the Rendezvous were in good condition. The antilock braking system was not working, but the regular brakes worked. Full braking would have been more likely to leave skid marks when the antilock braking system was not working. There were no skid marks on the roadway to indicate that the brakes were fully applied before the Rendezvous went off the roadway and struck Zudell. A prosecution traffic crash reconstruction expert opined that defendant's actions caused the crash. A medical examiner testified that Zudell died from injuries sustained in the crash.

Defendant was charged with first-degree premeditated murder, MCL 750.316, but the jury found him guilty of the lesser included offense of second-degree murder as well as the separate charge of reckless driving causing death. Defendant was sentenced as described earlier. This appeal ensued.

Defendant filed a motion to remand the case to the trial court for a *Ginther*[1] hearing on the ineffective-assistance-of-counsel claims raised in defendant's appellate brief. This Court denied the motion to remand "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Saylor*, unpublished order of the Court of Appeals, entered February 15, 2023 (Docket No. 362020).

Defendant first argues on appeal that there was insufficient evidence to submit the charged offense of first-degree premeditated murder to the jury. Although the jury acquitted him of that charge and found him guilty of the lesser included offense of second-degree murder, defendant contends that the erroneous submission of the greater charge to the jury reduced his chances of acquittal because of the possibility of a compromise verdict. Defendant's argument lacks merit.

To preserve an issue regarding the submission of a charge to the jury, the defendant must move for a directed verdict. *People v Lugo*, 214 Mich App 699, 711; 542 NW2d 921 (1995), citing MCR 6.419. As defendant concedes on appeal, he did not move for a directed verdict. Therefore, this issue is not preserved for appellate review.

Generally, a trial court's decision whether to deny a motion for a directed verdict is reviewed de novo. *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014). This Court "review[s] the evidence in a light most favorable to the prosecutor to determine whether a rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt." *Id.* (quotation marks and citation omitted). This Court's review is limited to the evidence presented by the prosecution up to the time the motion was made. *People v Powell*, 278 Mich App 318, 320 n 1; 750 NW2d 607 (2008). "Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime." *People v Pena*, 224 Mich App 650, 659; 569 NW2d 871 (1997), mod in part on other grounds 457 Mich 885 (1998). "[Q]uestions regarding the credibility of witnesses are left to the trier of fact." *Id.*

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

As explained, however, defendant failed to preserve the issue by moving for a directed verdict. Unpreserved issues are reviewed under the plain-error standard. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain-error standard, a defendant must show that an error occurred, that it was clear or obvious, and that it caused prejudice, i.e., that the error affected the outcome of the proceedings. *Id*. at 763. Reversal is proper only if the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*. at 763-764.

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016) (quotation marks and citation omitted). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Id*. at 266 (quotation marks and citation omitted). "Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *Id*. (quotation marks and citation omitted). "Though not exclusive, factors that may be considered to establish premeditation include the following: (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *Id*. (quotation marks and citation omitted).

There was sufficient evidence from which a rational trier of fact could find that defendant committed first-degree premeditated murder. Defendant does not contest on appeal that he drove the vehicle that struck Zudell. Defendant argues that there was no evidence of planning or that he thought in advance about what he was doing. However, the evidence supports a reasonable inference that defendant acted with premeditation and deliberation.

Zudell was defendant's former girlfriend, and Zudell was in a relationship with another man in the same neighborhood at the time of the incident. Multiple people in the neighborhood saw defendant angrily arguing with Zudell shortly before the incident. One eyewitness saw defendant physically assault Zudell during this encounter. A short time later, defendant drove his vehicle over a curb and into Zudell, running her over. Multiple witnesses testified that defendant was driving faster than the speed limit and that it sounded like he sped up before he hit Zudell with his vehicle. There were no skid marks in the road to indicate that defendant applied the brakes before his vehicle went into the grass. The jury saw surveillance video of the incident multiple times, and the jurors viewed defendant speeding and veering toward Zudell. The prosecution's reconstruction expert opined that defendant's actions caused the crash. A medical examiner testified that Zudell died from injuries sustained in the crash.

Although the jury acquitted defendant of first-degree premeditated murder and instead found him guilty of the lesser included offense of second-degree murder, defendant argues that the allegedly erroneous submission of the greater charge to the jury was not harmless because his chances of acquittal were substantially decreased by the possibility of a compromise verdict. But as explained, there was sufficient evidence to support the submission of the first-degree murder charge to the jury. It is thus unnecessary to address defendant's contention that the allegedly improper submission of the first-degree murder charge to the jury led to an impermissible compromise verdict that defendant was guilty of second-degree murder.

But even if defendant were correct that there was insufficient evidence of first-degree premeditated murder, he would not be entitled to relief. The jury acquitted defendant of first-degree murder and instead found him guilty of second-degree murder. Defendant does not present an appellate argument challenging the propriety of the submission of the second-degree murder charge. "[A] defendant has no room to complain when he is acquitted of a charge that is improperly submitted to a jury, as long as the defendant is actually convicted of a charge that was properly submitted to the jury." *People v Graves*, 458 Mich 476, 486-487; 581 NW2d 229 (1998). Therefore, when a defendant does not dispute that the charge of second-degree murder was properly submitted to the jury, and the defendant is acquitted of first-degree murder, "any error arising from the submission of the first-degree murder charge to the jury was rendered harmless when the jury acquitted defendant of that charge." *People v Moorer*, 246 Mich App 680, 682-683; 635 NW2d 47 (2001).

"If, however, sufficiently persuasive indicia of jury compromise are present, reversal may be warranted in certain circumstances." *Graves*, 458 Mich at 487-488.

That is to say, a different result *may* be reached . . . where the jury is presented an erroneous instruction, and: 1) logically irreconcilable verdicts are returned, or 2) there is clear record evidence of unresolved jury confusion, or 3) as the prosecution concedes in the alternative, where a defendant is convicted of the next-lesser offense after the improperly submitted greater offense. [*Id*. at 488.]

The record contains no indicia that the second-degree murder verdict was the result of an impermissible jury compromise. There were no logically irreconcilable verdicts or clear record evidence of unresolved jury confusion. Although defendant was convicted of the next-lesser offense after the allegedly improperly submitted greater offense, this does not by itself *require* reversal. Rather, our Supreme Court in *Graves* indicated that reversal *may* be warranted but there is no evidence to establish any evidence of jury compromise here.

The trial court instructed the jury that the verdict must be unanimous and "must represent the individual, considered judgment of each juror." The trial court further instructed the jury that "none of you should give up your honest opinion about the case just because other jurors disagree with you or just for the sake of reaching a verdict. In the end, your vote must be your own, and you must vote honestly and in good conscience." "It is well established that jurors are presumed to follow their instructions." *Graves*, 458 Mich at 486. Further, after the verdict was announced, the jurors were polled, and each juror expressed agreement with the verdict. Overall, the record provides no basis to conclude that the second-degree murder conviction was the product of an impermissible jury compromise. See *Moorer*, 246 Mich App at 683 n 1 (rejecting the defendant's argument that the record contained persuasive indicia of jury compromise, given that "the trial court instructed the jurors that they were not to compromise their views to reach a verdict" and that, "after the verdict was rendered and the jury was polled, each juror affirmed a verdict of second-degree murder").

Defendant further argues that his trial counsel was ineffective for failing to move for a directed verdict on the charge of first-degree premeditated murder. We disagree.

-4-

Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*. Because no *Ginther* hearing was held, this Court's review of the ineffective-assistance claim is limited to the existing record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

"To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

As noted, defendant contends that his trial counsel was ineffective for failing to move for a directed verdict on the charge of first-degree premeditated murder. As explained, the prosecution presented sufficient evidence to support that offense. Therefore, a motion for a directed verdict on that offense would likely have failed. Indeed, defense counsel was not ineffective for failing to make a meritless motion for a directed verdict. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Defendant also cannot establish the prejudice prong of his ineffective-assistance claim because he was acquitted of first-degree murder and the record affords no basis to conclude that the second-degree murder conviction was the result of jury compromise.

Defendant next argues that the trial court erred by admitting Brown's testimony regarding his observation of the surveillance video. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019), citing MRE 103(a)(1). As defendant concedes on appeal, the evidentiary issue is unpreserved because defense counsel did not object to the portion of Brown's testimony that defendant challenges on appeal.[2] Because the evidentiary issue

---

[2] Defendant briefly alludes to Brown's testimony that defendant "aims for her." Defense counsel objected to that testimony as speculative, and the trial court sustained the objection. That

is unpreserved, this Court's review is under the plain-error standard, *Thorpe*, 504 Mich at 252, citing *Carines*, 460 Mich at 763, which was set forth earlier.

MRE 701 provides,

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

However, "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense." *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (quotation marks and citation omitted). If a witness is in no better position than the jury to identify a person shown in a video or photograph, the witness may not invade the jury's province by providing opinion testimony on the matter. *Id*. at 52-53. But if there is some reason why the witness is in a better position than the jury to discern correctly what is depicted in the video or photograph, the witness's testimony may be admissible to help the jury understand what is shown. *Id*.

Brown lived in the neighborhood where the crash occurred and had multiple surveillance cameras at his home, including the camera that captured the video of the crash. Brown was in his backyard and heard the crash. Brown then jumped over his fence and saw a few people arguing with defendant. Brown was related to defendant's family and knew of him. Brown testified that, after the crash occurred, defendant "was kind of, I don't know, like nonchalant, not caring." Brown then went and checked his surveillance video to see the incident. Defendant's main focus involves a portion of Brown's testimony; Brown responded to a question about what he saw on the video:

> I seen his—I don't even know what kind of car it was. But I seen him flying down I think it was Euston going toward the next street behind me and I seen the girl—well, before I seen his car, I was—I seen the girl on a bike. She had—she was like riding and then she got off her bike and she went up to the fence line. I think she was like petting some dogs or something.
>
> And then his car was like flying, going like, not even exaggerating, 40 or 50 miles an hour and he went up on the law [sic: lawn] and nailed this chick and got out and loaded her up like it was no big deal. Didn't have no care in the world. It pretty much looked like he was telling people to get f***ed.

When asked what he meant when he testified that defendant did not seem to care, Brown responded: "He was in no rush to like get out and like help her or like he didn't really give that

---

testimony is not the main focus of defendant's appellate argument. Defense counsel's objection to that testimony was on the ground that the testimony was speculative, which differs from defendant's appellate argument. Because defense counsel did not specify the same ground for objection that is asserted on appeal, the issue is unpreserved. And again, defendant himself properly concedes on appeal that the evidentiary issue is unpreserved.

look like he was like sorry or cared or anything. It was like he just like—kind of like another day. Didn't care."

At another point, Brown testified that defendant "aims for her." But defense counsel objected on the ground that Brown was speculating about what happened, and the trial court sustained the objection. The trial court later instructed the jury not to consider excluded evidence, and the court told the jury to "[m]ake your decision only on the evidence that I let in and nothing else." "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

As for the remaining parts of Brown's testimony that defendant challenges on appeal (i.e., the previously quoted testimony), Brown's testimony was rationally based on his perception and helpful to a clear understanding of his testimony. Brown was related to defendant's family and knew who defendant was, thereby enabling Brown to identify defendant. Brown was familiar with the neighborhood because he lived there, facilitating his ability to describe events such as what Zudell was seen doing on the video before she was struck and killed. Further, although Brown did not personally observe the actual crash, he heard it occur from his backyard and then jumped over his fence and personally observed some of defendant's behavior after the crash. Brown's testimony about what he personally heard and observed at the scene helped the jury to understand why he then checked his surveillance video, and his description of what he saw in the video helped explain why he told the police about the video and turned it over to the police. Overall, defendant has not demonstrated an error, let alone a clear or obvious error, in the admission of Brown's testimony that defendant challenges on appeal. Also, given the other evidence of guilt that is described later, defendant has not demonstrated that Brown's testimony affected the outcome of the proceedings.

Defendant further argues that his trial counsel was ineffective for failing to object to the portions of Brown's testimony that defendant challenges on appeal. As explained, however, the trial court did not err in admitting Brown's challenged testimony on appeal. Defense counsel was not ineffective for failing to raise futile objections. *Ericksen*, 288 Mich App at 201. Moreover, defendant is unable to establish the prejudice component of his ineffective-assistance claim. Setting aside Brown's testimony, the jury repeatedly viewed the video and could see defendant's vehicle traveling too fast for a residential neighborhood, going off the road, and striking Zudell. The testimony of other witnesses who were in the neighborhood indicated that defendant was speeding before striking Zudell. Defendant cannot demonstrate that, but for his trial counsel's failure to object, there was a reasonable probability of a different result.

Defendant next argues that the prosecutor engaged in misconduct with respect to eliciting of Brown's testimony. We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). As defendant concedes on appeal, the issue of prosecutorial misconduct is unpreserved because defendant did not contemporaneously object and request a curative instruction with respect to the alleged prosecutorial misconduct. Because the issue of prosecutorial misconduct is unpreserved, this Court reviews the issue under the plain-error standard, *Bennett*, 290 Mich App at 475-476, which was set forth earlier.

The central question with respect to a claim of prosecutorial misconduct is "whether the defendant was denied a fair and impartial trial." *Bennett*, 290 Mich App at 475 (citation omitted). "[T]his Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* at 476 (quotation marks, brackets, and citation omitted). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

With respect to Brown's testimony that defendant "aims for" Zudell, the benign nature of the prosecutor's questioning is demonstrated by a full quotation of the questions and answers:

> *Q*. The person in the street, is that this back here?
>
> *A*. Yeah.
>
> *Q*. Is that what you are talking about?
>
> *A*. That's the girl right there. She is—it looks like she almost falls off her bike or something. No. There she is. She falls, yeah. I don't know if she was intoxicated or was on any drugs or anything, but it kind of looked like she was intoxicated. She—there's dogs right there. There he is. Boom. He—yeah, he aims for her. He—

Defense counsel then objected on the ground that Brown was speculating about what happened, and the trial court sustained the objection. As this quotation makes clear, the prosecutor did not directly elicit Brown's testimony that defendant "aims for" Zudell. "Unresponsive answers from witnesses are generally not prosecutorial [misconduct]." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 427; 884 NW2d 297 (2015). And again, the trial court sustained the defense objection. The trial court later instructed the jury not to consider excluded evidence, and the court told the jury to "[m]ake your decision only on the evidence that I let in and nothing else." Again, "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Abraham*, 256 Mich App at 279.

As for the remaining parts of Brown's testimony that defendant has challenged on appeal, we explained earlier that Brown did not express an opinion on defendant's guilt or innocence and that Brown's testimony was rationally based on his perceptions and helped to provide the jury with a clear understanding of his testimony. Defendant has provided no basis to conclude that the prosecutor's questioning was anything other than a good-faith effort to admit evidence. Such a good-faith effort does not amount to prosecutorial misconduct. *Dobek*, 274 Mich App at 70. And given the other evidence of guilt discussed earlier, no basis exists to conclude that the prosecutor's elicitation of Brown's testimony affected the outcome of the proceedings.

Defendant further argues that his trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct. As explained, the prosecutor did not engage in misconduct. Defense counsel was not ineffective for failing to raise a futile objection. *Ericksen*, 288 Mich App at 201. Moreover, given the other evidence of guilt, defendant cannot demonstrate that, but for his trial counsel's failure to object, there was a reasonable probability of a different result.

Affirmed.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney